PETER J. SULLIVAN, administrator, *vs.* CITY OF HOLYOKE.
PETER J. SULLIVAN *vs.* SAME.

Hampden.    January 4. — July 2, 1883.

A city owned a building which was principally occupied by its superintendent of streets. In 1879, naphtha was stored there by the chairman of the committee on fuel and street lights, who was also an alderman of the city. A particular portion of the building was devoted to its storage, to which the city lamplighter, an employee of the committee on fuel and street lights, had access. Naphtha was used in the street lights. In 1880, while the naphtha was so stored, an explosion of it took place, but what caused such explosion did not appear. *Held,* in an action for an injury caused by the explosion, that there was evidence tending to show negligence in storing the naphtha in the building; and that it could not be ruled, as matter of law, that the city was not liable.

THE FIRST CASE was an action of tort for personal injuries occasioned to the plaintiff's intestate, Peter Sullivan, by an explosion of naphtha, alleged to have been negligently stored by the defendant.

THE SECOND CASE was an action of tort for loss of services of said Peter by the same explosion, Peter being the minor son of the plaintiff.

The cases were tried together in the Superior Court, without a jury, before *Putnam,* J., who reported them for the determination of this court, in substance as follows :

Peter Sullivan was about twelve years of age. One Patrick Long, a boy about fourteen years of age, was employed by the superintendent of streets of the defendant city to trim the lanterns which were at that time placed, during the night, near a sewer which was building in one of the public streets, and to take these lanterns to the place where the sewer was, and to hang and light them there. These lanterns were kept inside of the building in which the explosion, hereinafter described, took place, and Long was accustomed to go nightly to this building to trim the lanterns, and then to go and set them, and light them.

On the morning of Saturday, July, 10, 1880, about half-past seven o'clock, he called at the house of Sullivan, and Peter went with him to this building. Long went inside, and began trimming the lanterns; Sullivan remained outside of the building,

in an alley on which the building fronted. He had nothing to do about trimming the lanterns, and had no business at the place, but only went to accompany Long. Long had been engaged for about ten minutes in trimming the lanterns, but had not trimmed them all, when an explosion took place.

Some naphtha which was stored in one corner of the building, and placed there under the circumstances hereinafter named, exploded, but how or why it did so the judge was unable to find upon the evidence. Long used no matches while in the building, and the lanterns were not lighted at the time of the explosion. The main door of the building, which fronted on the alley, remained open while Long was in the building. The roof of the building was blown off by the explosion, and fell upon Sullivan in the alley. He was taken out in about half an hour, and at that time was dead. Long was drawn out from under the timbers which fell inside of the building, but was not injured.

This building belonged to the defendant, and was called the old lock-up, having been formerly used for that purpose. It was a small, low brick building, with a slate roof; a sixteen-inch wall, with three or four inches of plank between the courses of brick, and a stone cap to the main door, which opened out on to the alley. This alley was not an accepted street, but ran from one accepted street to another. There were two or three tenements in it, and it had been used generally by the public as a thoroughfare for fifteen or sixteen years. The building fronted on this alley, and stood about one hundred and ten feet from Main Street, and it was situated in a thickly settled part of the city. In 1879, and up to the time of the storage of this naphtha, it was used exclusively as a tool-house, in which the superintendent of streets was accustomed to store the tools used by the workmen in his employ about the public streets.

Some time in that year, and prior to July 10, Dennis Sullivan, who was chairman of the committee on fuel and street lights in the defendant city, asked the superintendent of streets for permission to store some naphtha (which was used in some of the street lamps) in one of the cells in this building.

The superintendent objected, and thereupon said Sullivan asked the chairman of the committee on streets if he could use

a portion of the building for that purpose, and he said he might; and Sullivan thereupon ordered the naphtha to be moved into this building. The chairman of the committee on streets also told the superintendent of streets to let Sullivan store the naphtha there, and the superintendent thereupon had one of the cells cleaned out for the purpose. He also gave a key of the building to the city lamplighter, who was under the employ of the committee on fuel and street lights. The superintendent of streets hired and discharged the men in his employ, and sent the pay-roll to the city treasurer.

The defendant is a city with the ordinary powers of cities. The superintendent of streets was elected by the city council on joint ballot. At the time of the storing, in 1879, Dennis Sullivan was an alderman of the city, and chairman of the committee on fuel and street lights of that year. No action or vote of that committee was taken in reference to the storing of this naphtha. There was nothing on the records of the committee concerning it, and no member of the committee had any knowledge of the fact, excepting said Sullivan.

After this storing of naphtha in this building, in 1879, was begun, under the foregoing circumstances, it continued to be stored there down to the time of this explosion; but there was no evidence offered of any vote or other action of the city government of 1880, or its committees, or any individual member of them, in reference to its being stored there in 1880, or of any knowledge of any of them that the naphtha was being stored there during that year. It was in fact so stored, and the naphtha was used in the street lights during that year.

Upon these facts, the defendant asked the judge to rule, that, as matter of law, the defendant was not liable. The judge so ruled, and found for the defendant. If the ruling was correct, judgment was to be entered for the defendant; otherwise, new trials ordered.

Annexed to the report were such portions of the charter of the city, and of its by-laws, as were deemed material. A copy of them is printed in the margin.*

---

* "The administration of all the fiscal, prudential and municipal affairs of the said city, with the government thereof, shall be vested in one officer, to be called the Mayor ; one council of seven, to be called the

*H. W. Ely & C. F. Ely*, for the plaintiff.

*G. M. Stearns & W. H. Brooks*, for the defendant.

DEVENS, J.   There was some evidence tending to show negligence in storing the naphtha in the building, which was the cause of the injury.   It is a more difficult question whether the ruling that, as matter of law, upon the evidence, the defendant was not responsible therefor, can be maintained.

The naphtha was found in the building owned by the defendant, and occupied principally by its superintendent of streets. The same substance was originally stored there in 1879, by the chairman of the committee on fuel and street lights, who was then one of the aldermen of the city; and it had been continuously kept there until some time in 1880, when the injury complained of occurred.   A particular portion of the building was devoted to its storage, to which the city lamplighter, as he was

---

Board of Aldermen ; and one council of twenty-one, to be called the Common Council ; which boards, in their joint capacity, shall be denominated the City Council, and the members thereof shall be sworn to the faithful performance of their respective duties.   A majority of each board shall constitute a quorum for the transaction of business, and no member of either board shall receive any compensation for his services.''

"Any person desiring to manufacture, refine, mix, store or keep for sale any oil or fluid composed wholly or in part of any of the products of petroleum, in a greater quantity than one hundred gallons, in any one locality in the city of Holyoke, except as provided in the fifth section of chapter one hundred and fifty-two of the Acts of the year eighteen hundred and sixty-nine, shall make application in writing for a license therefor to the board of aldermen of said city, and shall state in such application the locality, building, or part of a building for which he desires a license, and whether he desires a license for manufacturing, refining and mixing said articles, or any of them, or a license for storing or keeping them, or both.

" No license shall be granted for manufacturing, refining, mixing, storing or keeping said articles, or any of them, upon any alley, sidewalk, or street within the limits of the city, nor upon any floor of a building above the first floor.

" No license shall be granted for mixing, storing or keeping crude petroleum, naphtha or gasoline, in any part of a building above the cellar, unless said articles are contained in metallic vessels securely closed.

"No license shall be granted for selling, or keeping for sale at retail, for illuminating purposes, any kerosene, refined petroleum, or any product of petroleum, which has not been inspected by the officer appointed for that purpose by the mayor and aldermen.''

termed, who was an employee of the committee on fuel and street lights, had access by means of a key; and naphtha was actually used in the street lights during that year.

It is familiar law that a city or town is not to be held responsible for the careless acts of officers who are required by statute to be chosen, and whose duties are thereby defined. *Hill* v. *Boston*, 122 Mass. 344. *Deane* v. *Randolph*, 132 Mass. 475. This for the reason that the municipal corporation has no control over their tenure of office, nor, as a general rule, any authority to direct the mode in which their duties are to be performed.

Where a town or city undertakes to perform a duty imposed upon it by law, by means of agents whom it may direct and control, it is held responsible for the acts of those agents. Thus, where a town, although it had duly chosen surveyors of highways, voted that the selectmen should be its agents to repair the highways and bridges, which had been injured by an extraordinary freshet, it was held responsible for a tort committed by them. *Hawks* v. *Charlemont*, 107 Mass. 414. *Deane* v. *Randolph*, *ubi supra*.

If a city sees fit, in the exercise of the duty imposed upon it of keeping the highways in repair, or because it deems it for the public advantage to provide for street lights by means of agents whom it furnishes with naphtha or other burning fluid, to be taken care of by them, as well as the lamps in which it may be used, it may properly do so. In such case, it would be responsible for the agents and servants whom it employed, as it could control and direct them. There was no evidence of any express authority, by vote of the city council, that the streets should be lighted by servants or agents whom the city employed. Express vote to this effect is not necessary. There was evidence that there was, and for some years had been, a committee of the city council on street lights, that the naphtha was the property of the city, kept in one of its buildings made accessible to an employee of the committee on street lights, who was a lamplighter, and that the streets were actually lighted by it. This was sufficient to raise the inquiry whether in fact these street lights were not maintained, and the explosive fluid owned, kept and used by authority of the city, and thus whether the city

was not responsible for the neglect of the servants employed in its custody and use.

For these reasons, a majority of the court is of opinion that the entry should be                    .          *New trials ordered.*