## INHABITANTS OF BROOKFIELD *vs.* HAMMOND REED & another.

Worcester.    September 30, 1890. — January 7, 1891.

Present: FIELD, C. J., W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Town — Bond to repair Way — Abandonment — Waiver — Evidence.*

A town may lawfully receive from individuals a bond to relieve it from the expense
of keeping a piece of public way in repair for all time.

An abandonment and waiver by a town of its rights under a bond, given to it by
individuals for the repair and maintenance of a portion of a highway forever,

is not shown by its highway surveyors' making, in connection with the ordinary annual repairs of ways, repairs at slight expense on such portion, or by the failure of the town to sue for such nominal breaches of the bond.

At the trial of an action brought by a town upon a bond conditioned to repair a part of a highway forever, the jury are to determine, under the Pub. Sts c. 171, § 10, the amount due the town in equity and good conscience at the time of the verdict, and evidence is admissible of expense incurred by the town in so doing after the commencement of the action.

In an action by a town to recover the expense of repairing a washout in a highway which the defendants had agreed to keep in repair, evidence is competent for the defence that a temporary bridge, although constructed under the advice of a competent engineer, was unnecessary, and that permanent repairs should have been made at the time, instead of later.

At the trial of an action by a town to recover the expense of repairing a washout in a way which the defendants had agreed to keep in repair, evidence for the defence, that it was proposed on behalf of the defendants to build a dam outside of the roadway to hold back the water, if the plaintiff town would then repair the roadbed by filling it in, instead of by means of a temporary bridge, is properly excluded.

CONTRACT, against Hammond Reed and Curlys Lyon, for breach of a bond in the penal sum of $1,000, dated October 3, 1852, signed by them, and by others who are deceased, and given to the plaintiff town, the condition of which was as follows: " The condition of this obligation is such, that whereas the inhabitants of the town of Brookfield have by their vote agreed and consented that Abel W. Reed, Curlys Lyon, and Micah T. Reed, and Hammond Reed may raise the road and abutments of the bridge in East Brookfield on the road leading from the depot of the Western Railroad to Podunk not exceeding seven and a half feet above the present road, the road abutments of the bridge and railing to be built in a good, substantial, and workmanlike manner, at least twenty-one feet wide, so that all travellers may pass with safety and convenience with their teams and carriages over every part of the twenty-one feet aforesaid, and on a level to meet the banks on each side of the stream passing under said bridge, the whole to be done and completed to the acceptance of Abraham Skinner, Jeremiah Mellen, and Alphonse Howe, a committee of said town chosen for the purpose, and to keep and maintain said raised part or causeway, abutments, and railing in good repair, free of all expense to said town forever. The inhabitants of said town on their part are to build and maintain a suitable bridge over and upon said abutments forever. Now if the said Abel W. Reed, Curlys Lyon, and Micah

T. Reed, and Hammond Reed, their heirs, executors, administrators, and assigns, or any of them, shall well and truly raise and build said road, abutments, and railing as aforesaid, and keep and maintain said abutments, road or causeway, and railing as aforesaid, and in manner as aforesaid, forever, then this obligation to be void and of no effect, or else to remain in full force and virtue." Writ dated August 30, 1888.

Trial in the Superior Court, before *Dunbar*, J., who allowed a bill of exceptions, in substance as follows.

The road referred to in the bond was a town way, properly laid out by the plaintiff town in 1840, now known as Mechanics Street in the village of East Brookfield. In 1853, the signers of the bond owning land on Seven Mile River, which this road crossed by means of a bridge, desired to build a mill, raise a dam, and improve their mill privilege, and for these purposes obtained permission to raise and did raise the abutments of the bridge, and the road approaches thereto, seven and a half feet, on condition that they should execute the bond in question. The legality and the regularity of the proceedings in raising the road were not questioned at the trial. The only question raised as to the bond was whether, under any circumstances, it was competent for the town to accept it. At the trial, the plaintiff proved the execution of the bond in pursuance of a vote at a legal town meeting of the voters of the town, and introduced evidence showing that a freshet on August 23, 1887, carried away a portion of the dam on the mill privilege, and thereby washed away about one hundred feet of the roadway to a depth of about twenty feet in the middle of the washout, and also damaged some other parts of it; that the waters of the pond were drained through this washout, and continued to run there until stopped by the building of a dam; that on September 6, 1887, the town notified the defendants in writing of the injury by the freshet, and requested them immediately to repair the same; that, the defendants failing to make repairs to the roadway or to do anything about the matter, the selectmen of the plaintiff town employed one Moore, a civil engineer of large experience in road and bridge building, to examine the premises with the view of devising a plan to repair the highway at the place of the washout; that Moore, after examining the premises, advised

them to throw a temporary bridge over the washout as the most economical plan, and the only proper one for the town to pursue under the circumstances, to provide for the travel until such time as the dam should be rebuilt, when the bridge might be removed and the break in the roadway filled with earth; and that the plaintiff adopted his advice, and put in a temporary bridge, and in October, 1889, after the dam was partially rebuilt, removed the bridge, and filled the break in conformity with the plans.

The defendants called as a witness one Forbes, who had succeeded by mesne conveyances to the title of the signers of the bond to the mill and mill privilege, subject to the burdens imposed by the bond, and offered to prove a conversation between him and the selectmen subsequent to their adoption of the plan recommended by Moore, the engineer, at which Forbes offered to co-operate with the selectmen in repairing the dam and roadway in such a manner as would have rendered unnecessary and inexpedient the erection of the temporary bridge. It appeared, in reply to a question by the judge, that Forbes did not offer in such conversation to perform the conditions of the bond, and repair the break in the roadway in accordance with its provisions, but that he in substance offered to build a dam outside the roadway, between it and the pond, if the town would fill in the travelled part of the roadway.

The judge excluded this evidence, with the remark that he should rule, for the purposes of this case, that if the selectmen employed a competent engineer and followed his directions, that relieved the plaintiff town of any further responsibility in the premises, and he should exclude all evidence subsequent to the adoption of the engineer's plan except upon the point as to the competency of the engineer, and upon the question whether the selectmen carried out his directions faithfully; and the defendants excepted.

The defendants also offered evidence to prove that a temporary way equally good for public travel as the temporary bridge could have been provided at much less expense than the bridge, and that there was no good reason why the washout could not have been filled with dirt and gravel at the time of the erection of the temporary bridge. The judge excluded the evidence; and the defendants excepted.

The defendants also introduced evidence, that, for many years between the date of signing the bond and the breach in question, the highway surveyors of the plaintiff town, in making the ordinary repairs upon the highways of the town, repaired the portion covered by the bond, the proportionate cost of the same each year being less than a dollar. It further appeared in evidence, that in 1863 the roadway, in practically the same place, together with a portion of the dam, was washed away during a freshet, and that the road was repaired by those holding under the signers of the bond, who had assumed in deeds from them all their liabilities under the bond.

The plaintiff introduced evidence to show that on September 29, 1889, it removed the temporary bridge, and filled up the gap where it stood with dirt and gravel, at an expense of $245.35, and that this was in accordance with the plans of the engineer, and a reasonable expenditure; and asked the judge to rule that this item of expense, so far as the jury should find it to be reasonable and necessary, could be recovered in the present action; and the judge so ruled, against the defendants' objection; and the defendants excepted.

At the conclusion of the evidence, the defendants asked the judge to rule, as matter of law, "first, that upon the evidence the action cannot be maintained; and, secondly, that the bond or contract sued on is invalid and void, so far as it relates to the perpetual repair and maintenance of the raised part of the roadway, causeway, and abutments therein mentioned."

The defendants also requested the following instructions to the jury: "If you find that, since the roadway in question was raised by the defendants, in 1853, the plaintiffs have waived their rights under the contract sued on, or have abandoned the same, then the plaintiffs cannot maintain this action, and the defendants are entitled to a verdict. And, in considering whether the plaintiffs have waived their rights or abandoned the contract, you have the right to take into account the words, acts, and conduct of both parties, to consider who has repaired the road and exercised control over the same; and, in fine, to consider any of the evidence which tends to show the real intention and purposes of either party concerning the matter in controversy."

The judge declined so to instruct, but ruled as follows:

" 1. That the action might be maintained.  2. That the bond was not invalid.   3. That there was no evidence in the case upon which the jury would be justified in finding that there had been a waiver by the town of the conditions of the bond."   The judge further instructed the jury, that, "if the defendants neglected for an unreasonable length of time after due notice to repair the roadway in accordance with the provisions of the bond, and the plaintiff thereafter obtained the services of a competent engineer, competent to advise in such matters, who made a careful and prudent investigation of the circumstances, and recommended a plan for the repair of the roadway, which was adopted by the plaintiff, and by it carried out in a reasonable, prudent, and economical manner, then the plaintiff was entitled to recover what was thus expended by it."

The bill of exceptions concluded as follows : " The jury returned a verdict for the plaintiff.   The defendants being aggrieved by said rulings and refusals to rule, except thereto, and pray that their exceptions may be allowed."

The copy of the record of the Superior Court transmitted to this court contained the following finding by the jury : " The jury find for the plaintiff, and assess damages in the sum of nine hundred twenty-five and $\frac{35}{100}$ dollars."

*B. W. Potter*, for the defendants.

*H. W. King*, for the plaintiff.

W. ALLEN, J.   Certain specific repairs, consisting of raising the grade of the road, were ordered in a town way in the plaintiff town.   The exceptions state that no question was made in regard to the regularity and legality of the proceedings in raising the road.   The defendants undertook to make and maintain the repairs, and gave the bond in suit to the town, with condition that they would raise the road and keep the raised part in repair free of expense to the town forever.   It is objected that the contract is illegal, because by it the town has deprived itself of the control and regulation of the way.   But it cannot have that effect.   The contract provided a mode in which the town might perform its duty to keep a public way in repair.   It did not obviate that duty, or relieve the town from liability for want of repair in the way.   It cannot prevent the lawful discontinuance of the way, and it will not be construed as intending to do that.

The subject matter is a public way, and if that should cease to exist, the obligation of the town to maintain the way and the bridge, and the obligation of the defendants to keep the way in repair, would cease. No question in regard to the regularity or validity of the order for repairing the way is before us, or of the effect of the bond upon that. Nor is there any question presented in regard to the validity of a contract to make payments of money in future years. We have no doubt that the plaintiff could lawfully receive from individuals an obligation to relieve it from the expense of keeping a piece of public way in repair for all time. *Hawks* v. *Charlemont,* 107 Mass. 414. *Arlington* v. *Cutter,* 114 Mass. 344, and cases cited. *Deane* v. *Randolph,* 132 Mass. 475. *Sullivan* v. *Holyoke,* 135 Mass. 273. *Waldron* v. *Haverhill,* 143 Mass. 582.

The evidence that highway surveyors of the plaintiff town had repaired the way in question was not sufficient to prove that the plaintiff had waived or abandoned its right under the bond. The highway surveyors did not act as agents of the plaintiff, and the repairs they made were in connection with the ordinary annual repairs of highways, and the cost at any one time was but a fraction of a dollar. No inference that the plaintiff had surrendered the bond can be drawn from the fact that actions were not brought for such almost nominal breaches of it. When substantial repairs were at one time made necessary, by the washing away of the roadbed, they were made in behalf of the makers of the bond, and not by the plaintiff.

The other exceptions relate only to the question of damages, and are not shown by the bill of exceptions to be material. It is not stated that the jury was to assess the sum for which execution was to be awarded. If it can be inferred that the question whether the plaintiff was entitled to judgment for the amount of the penalty of the bond, and the question for what amount it was entitled to have execution issue, were submitted to the jury together, the difficulty remains that the exceptions show only that the verdict was for the plaintiff, which would import a verdict for the penal sum of the bond, and do not show that the jury passed upon the question of the amount due, nor that the defendants were aggrieved by any ruling of the court in regard to damages. By referring to the record of the verdict, however,

Mass.]  BROOKFIELD *v.* REED.  575

it appears that the jury not only found for the plaintiff, but also found the amount of damages which, being for less than the penal sum of the bond, must be taken as an assessment of the amount due for breach of the condition of the bond for which execution should issue. It appears also, from the amount found, that the rulings excepted to were material. We consider, therefore, the exceptions which relate to that part of the case.

Evidence showing expenses incurred after the commencement of the action was properly admitted; the jury were to assess the amount due in equity and good conscience at the time of the verdict. Pub. Sts. c. 171, § 10. *Waldo* v. *Fobes*, 1 Mass. 10.

The plaintiff is entitled to be reimbursed the sums which were reasonably expended by it in repairing the way. It built a temporary bridge over the washout, and about two years later filled in the roadbed with earth. The defendants contended that the bridge was unnecessary, and offered evidence to prove that there was no good reason why the permanent filling in should not have been done at the time the bridge was erected, and that a temporary way equally good with the bridge could have been provided at much less expense. This evidence was excluded, and the question whether building the bridge was in fact reasonable and proper, or was an unnecessary and unreasonable mode of repairing the way, was excluded from the jury. The selectmen consulted a competent and experienced civil engineer, and acted under his advice. The jury were instructed, that, " if the defendants neglected for an unreasonable length of time after due notice to repair the roadway in accordance with the provisions of the bond, and the plaintiff thereafter obtained the services of a competent engineer, competent to advise in such matters, who made a careful and prudent investigation of the circumstances, and recommended a plan for the repair of the roadway, which was adopted by the plaintiff, and by it carried out in a reasonable, prudent, and economical manner, then the plaintiff was entitled to recover what was thus expended by it."

We think that the rule adopted by the court, and in accordance with which the evidence was excluded, was wrong in taking from the jury the question whether the selectmen of the plaintiff, in adopting the plan of building a temporary bridge recommended by their engineer, acted in good faith and with reasonable

judgment. They were the agents of the plaintiff to determine for it whether the bridge was necessary, and they could not delegate their authority to any one. They were not bound to adopt the recommendations of their engineer, but were bound to exercise their judgment in determining whether to carry them out. The rule of law was not changed when they consulted an expert, but it remained a question of fact whether, under all the circumstances, their decision to build a temporary bridge was reasonable. There is no rule of law that the expert opinion was in fact correct, or that the selectmen may not have had reason to know that it was incorrect. The evidence offered, tending to show that the temporary bridge was unnecessary, and that the expense of it might have been saved, was competent upon the question whether that expense was reasonably incurred, and it was not rendered incompetent, however its weight may have been affected, by the fact that the bridge was built under the advice of a competent expert.

The testimony of Forbes was, we think, properly excluded. He was the owner of the mill and the mill privilege, under the signers of the bond, and had assumed the burden of repairing the way. The breaking away of the dam caused the washing away of the earth of the road, and the water continued to flow in the channel thus made. The defendants offered to prove that Forbes proposed to build a new dam outside of the roadway, thus holding back the water, and rendering it practicable or easier for the plaintiff to fill in the road, if the plaintiff would repair the roadbed by filling it in. He did not offer to repair the way, but only to build a dam on his own land, if the plaintiff would relieve him and the signers of the bond of the burden of repairing it. The plaintiff was under no obligation to repair the road at its own expense in order to save the defendants the expense of a temporary bridge. If, after the plaintiff had adopted the plan of a temporary bridge, Forbes had offered to build a dam at once, so that permanent repairs by filling in could be made as speedily as could the proposed temporary bridge, on condition that the plaintiff would then make the permanent instead of temporary repairs, without prejudice to its right to recover on the bond, a very different question would have been presented.

*Exceptions as to the defendants' liability overruled.*
*Exceptions as to the amount due on the bond sustained.*