Merrimack, }
May 6, 1902. }

71  367
72  232

## HALL v. CONCORD.

The commissioner of highways for the city of Concord is not an agent or ser-
vant of the municipality, but an independent public officer, for whose mis-
feasance, or that of his employees, the city is not liable.

Where the duty of repairing the highways of a city is by law entrusted to an
independent public officer, the municipality is not made liable for injuries
resulting from the negligence of his employees by the fact that the mayor,
without authority, assumed a joint superintendence of the work, nor by
the fact that a portion of the money expended for repairs was donated by
an individual taxpayer.

A municipal corporation is not liable for injuries resulting from the negligent
management of its steam road-roller by persons who are not its servants or
agents.

An acceptance of a highway upon which extensive repairs have been made
does not render a town liable for injuries to a traveler which are not
chargeable to defective construction.

CASE, for negligence. Transferred from the April term, 1901,
of the superior court by *Peaslee*, J. The plaintiff's counsel made
the following opening statement:

"This is an action on the case for negligently operating a steam-
roller, thereby frightening the plaintiff's horses and causing them
to run away, and inflicting the injuries complained of.

"The defendant is a municipal corporation, chartered by the
legislature in 1849. Laws 1849, c. 835. By section 14 of the
chapter, all the powers of the inhabitants as a municipal corpora-
tion are vested in the city council, consisting of the mayor, board
of aldermen, and board of common council. By vote of the city
council, passed May 14, 1895, the commissioner of highways and
the joint standing committee on roads and bridges were appointed
a committee to purchase a steam-roller for the benefit of the city,
and an appropriation for that purpose was made out of the regular
highway appropriation. In accordance with this vote, the steam-
roller in question was purchased and put into service upon the
roads of the city.

"In the spring of 1899, Mrs. Mary B. G. Eddy, who frequently
drives upon Pleasant street for pleasure and recuperation, was
desirous of having the highway rebuilt, macadamized, and made
into a boulevard for a distance of about half a mile as it approached
and passed her premises on the same street. Such reconstruction
and improvement were of special advantage to Mrs. Eddy, and she

offered to bear such portion of the damages and expenses of constructing the highway in an improved form as might seem just to the parties concerned. After consultation with the mayor and highway commissioner, Mrs. Eddy made a proposition to the board of mayor and aldermen in which she agreed to pay the city the sum of $5,000 toward the expense of the construction of the boulevard, the expenditure to be made ' under the supervision of the mayor and commissioner of highways.' In order to obtain the benefit of this proposition, and to secure for the city the proffered sum for the improvement of its highway and for its own profit, the city voted, by its board of mayor and aldermen, to accept Mrs. Eddy's proposition, and authorized the mayor to sign a certain contract with Mrs. Eddy on behalf of the city. This contract provided that, in consideration of $5,000 paid by Mrs. Eddy, the city would macadamize the street to a certain width and according to certain specifications, ' in a thorough and workmanlike manner, to the satisfaction of the commissioner of highways of said city and of the mayor thereof.' This contract was dated May 4, 1899. On the same date, Mrs. Eddy presented a petition to have Pleasant street widened and straightened; and under this petition the street was widened and straightened and the grade thereof changed, under proper proceedings by the board of mayor and aldermen.

"The mayor and Mrs. Eddy executed the contract, work was begun thereunder, and the street was constructed as therein provided, except that it was not completed within the time limited. Before the work was completed, and from time to time during the process of construction, Mrs. Eddy paid to the city the sum provided for in her contract and $3,500 in addition, making $8,500 in all. The work cost the city about $5,000 additional. The mayor and the commissioner of highways jointly superintended and directed the work, the commissioner being present most of the time and the mayor occasionally. The steam-roller was used in the construction of the macadamized road under the direction of the mayor and the commissioner of highways. On October 21, 1899, the plaintiff was driving past, in the exercise of due care, and the workmen so carelessly operated the steam-roller that the accident followed."

Upon this opening statement, the contract therein referred to, and the special act as to the highway commissioner for Concord (Laws 1891, c. 186), the defendants moved for a nonsuit on the ground that they were not liable for the negligence complained of. The motion was granted, subject to the plaintiff's exception.

*Eastman & Hollis*, for the plaintiff.

*Edmund S. Cook*, for the defendants.

BLODGETT, C. J.   The defendants' only duty in respect of the highway upon which the plaintiff was injured while in the exercise of the public right of using it, was the statutory one to maintain it in suitable repair, and this duty it is conceded they properly performed.   The sole ground of complaint is the careless operation of the defendants' steam-roller by workmen engaged in macadamizing the highway at the time of the plaintiff's injury, and who were presumably employed by the commissioner of highways.

Assuming that "a municipal corporation is liable at common law for injuries to private rights resulting from the negligent performance of a public duty by agents and servants whom it has the power to direct and control" (*Rhobidas* v. *Concord*, 70 N. H. 90), the act of which the plaintiff complains was not the act of the defendants.

By the special legislative enactment of 1891 (Laws 1891, c. 186), the whole territory of the defendant city is constituted one highway district and placed under the superintendence of a commissioner of highways, who (*s.* 1) " shall have all the powers, perform all the duties, and be subject to all the liabilities which by law appertain to surveyors of highways, except so far as the same are changed by the provisions of this act." Sections 2 and 3 provide for his election by the city council, make him subject to removal by the council at their discretion, and place him under the direction of the mayor and aldermen with reference to the expenditure of money and accountability therefor; and then, by section 4, it is imperatively declared that " he shall have charge of the roads and bridges in the care of the city, and all repairs thereon shall be under his direction."

Possessed of the broad and exclusive authority conferred by section 4, in respect of roads and bridges in the care of the city and all repairs thereon, the defendants' commissioner of highways is not to be regarded as their agent or servant, but as a public officer deriving his authority from the legislature, which possesses the paramount control over all the public highways within the state, and may place their management and repair in the hands of such agencies as it may deem to be most fitting.   Neither the city nor the board of mayor and aldermen can direct or control the commissioner in the performance of the duties so entrusted to him. It is for him alone to determine in what manner and through what instrumentalities repairs shall be made, and to do all other things necessary in their direction, control, and management.   This being so, for his misfeasance, or that of his employees, the defendants are not liable.   *Rhobidas* v. *Concord, supra,* 117; *Gross* v. *Portsmouth,* 68 N. H. 266, 267, and authorities cited; *Downs* v. *Hopkinton,* 67 N. H. 456; *Wakefield* v. *Newport,* 62 N. H. 624, 625; and numerous other cases.

No more are the defendants liable because the repairs were being superintended by the mayor and the commissioner jointly. The general statutory provision, that money for highway repairs shall be expended by the selectmen or surveyors of highways, or agents appointed for the purpose ·by the selectmen (P. S., *c.* 73, *s.* 6; Laws 1899, *c.* 29, *s.* 3), has no application to the city of Concord; and plainly, the board of mayor and aldermen had no power to make the Eddy contract, because by the city charter and by express statutory provisions the administration of all the fiscal, prudential, and municipal affairs of the city is vested in the city council, consisting of the mayor, board of aldermen, and board of common council (Charter of Concord, Laws 1849, *c.* 835, ss. 2, 14; P. S., *c.* 50, *s.* 1; *Kelley* v. *Kennard*, 60 N. H. 1, 3), and for this reason also the mayor and aldermen could confer no authority upon anybody in the superintendence of the repairs and improvements in question. But apart from these considerations, the Pleasant-street highway was then an existing highway " in the care of the city," and consequently the commissioner had charge of it, and the direction of all repairs upon it, by virtue of the specific and mandatory provisions of the act of 1891, which cannot be construed to mean that the commissioner has no jurisdiction as a public officer except when the mayor and aldermen omit to appoint agents to do the work imposed upon him by that act.

The joint superintendence of the mayor in the making of the repairs did not constitute an assumption by the city of their control and direction (*Bowden* v. *Rockland*, 96 Me. 125); and, moreover, the legitimate inference from his alleged supervisory action over the work is that he was exercising the power as to the expenditure of money conferred on the board of mayor and aldermen by the act of 1891. But if he actually assumed to undertake the joint direction of the work, the defendants are not responsible for his performance of that which he had no power to do, and which they had no power to authorize. *Gross* v. *Portsmouth, supra*, and authorities there cited.

The plaintiff's contention that the defendants are liable on the ground that the work in progress on the highway when he was injured was constructive work which the defendants were at liberty to do directly by agents or servants, or indirectly through contractors, the same as in the original construction of a highway, is not based on anything ·appearing in the reserved case, nor is it well founded. The fact that Mrs. Eddy induced the board of mayor and aldermen to make an extraordinary expenditure of money on the highway did not transform the mayor and the commissioner into servants of the city instead of public officers, nor make the work any less a governmental one (*Colwell* v. *Water-*

*bury*, 51 Atl. Rep. 530; *Bowden* v. *Rockland*, *supra*); and the extent of the work, or its expense, furnishes no test by which to determine the capacity in which they acted. So, too, the further fact that the work resulted in what the plaintiff terms "a boulevard" — whatever that may mean — has no tendency to show that the defendants were constructing a new highway. The highway existed before this work, and it exists now — the only change being in its improved condition as the result of regrading and widening it. Such work constitutes "repairs" within the fair intent and meaning of the act of 1891, which applies to and includes everything relating to the superintendence, care, and repair of all public highways within the city and to all work done thereon, constructive or otherwise,— the only exception, if' any (a point not now in question), being that highways laid out since the passage of that act may perhaps still be built by the city through agents or contractors.

It is further contended that the defendants should be held liable because the improvements made on the highway, which every person has the right to use regardless of his residence, were for the "special benefit and profit" of the city. This assumption is both misleading and unwarranted. In precisely the same sense it might be said that all repairs and improvements of highways therein are a special benefit to the city, as distinguished from the general public. But no such distinction can be made. The legislature imposes on municipalities, whether they wish it or not, the burden of maintaining highways, not for their own but for the public benefit and welfare (*Wooster* v. *Plymouth*, 62 N. H. 193, 215); and if they choose to expend in their maintenance more than may be necessary to render them suitable for the public travel, they do not, in a legal sense, derive any special benefit, profit, or advantage therefrom in their corporate capacity beyond that derived by the public. And if the contrary were true, and whether the money with which highway repairs and improvements are made is provided by the municipality or is donated by an individual, no reason is afforded why the expenditure of the money shall not be made by the public officer charged by law with the direction and control of all such repairs and improvements.

Nor are the defendants liable because of their ownership of the roller. There is no ground for claiming that at the time of the plaintiff's injury the roller was a nuisance (Cool. Torts 617), or that it was defective, or that it was not being used for its intended purpose, or that the purpose was not a proper and lawful one. The single allegation of wrong is that the workmen so carelessly operated the roller that the injury to the plain-

tiff followed. Conceding this to be so, it falls far short of entitling him to a recovery. One insuperable difficulty, at least, remains: the workmen were not the defendants' servants, as is abundantly settled by repeated and familiar decisions of this court.

Finally, it may be observed as to the doctrine of "ratification by acceptance" invoked by the plaintiff, that his injury not having resulted from a defective construction of the highway occasioned by the work done upon it under the contract, no subsequent acceptance of the work or ratification of the contract by the city would entitle him to a recovery upon the authority of *Carpenter* v. *Nashua*, 58 N. H. 37, 38.

*Exception overruled.*

PARSONS and WALKER, JJ., concurred: CHASE, J., dissented.

REMICK, J., *dissenting.* If the servant of a turnpike corporation had, in reconstructing the company's way, so negligently operated a steam-roller as to inflict the injury complained of, the plaintiff's right of action would be unquestioned. While in respect of duties imposed by law, performed by governmental as distinguished from corporate agents, and for public as distinguished from municipal benefit, towns and cities are held to be subdivisions of the state and entitled to the same immunity from actions for negligence as the principal sovereignty (Will. Mun. Liab., ss. 3, 4, 5, 11; *Eastman* v. *Meredith*, 36 N. H. 284, 292; *Wooster* v. *Plymouth*, 62 N. H. 193; *Sargent* v. *Gilford*, 66 N. H. 543; *Doolittle* v. *Walpole*, 67 N. H. 554; *Gross* v. *Portsmouth*, 68 N. H. 266; *Rhobidas* v. *Concord*, 70 N. H. 90, 114), it is equally well established that, for negligence in the prosecution of work voluntarily assumed, performed by their own agents, and for their own profit, towns and cities are liable like private corporations or individuals. Will. Mun. Liab., ss. 3, 4, 5, 11, 24, 25; 2 Dill. Mun. Corp., ss. 966, 981; Wood Mast. & Ser., ss. 457, 469; Bus. Pers. Inj., ss. 56, 57, 58; *Eastman* v. *Meredith*, 36 N. H. 284, 295; *Rowe* v. *Portsmouth*, 56 N. H. 291, 293; *Clark* v. *Manchester*, 62 N. H. 577, 579; *Rhobidas* v. *Concord*, 70 N. H. 90, 111, 114, 115, 116; *Woodcock* v. *Calais*, 66 Me. 234; *Goddard* v. *Harpswell*, 84 Me. 499; *Waldron* v. *Haverhill*, 143 Mass. 582, 584; *Collins* v. *Greenfield*, 172 Mass. 78, 81; *Butman* v. *Newton*, 179 Mass. 1; *Hannon* v. *County*, 62 Mo. 313, 317. I am unable to see why the facts of the present case do not bring it squarely within the letter and spirit of the proposition last stated.

1. Certainly the work of converting a section of Pleasant street in the city of Concord into a "boulevard," to please the fancy of an individual residing thereon, and in consideration of her

agreement to bear the burden of the expense, was a "voluntary" as distinguished from an "imposed" undertaking, if those terms are to have their natural and ordinary meaning. The work was not done "under compulsion of statute." *Collins* v. *Greenfield*, 172 Mass. 78, 81. The city "could not have been compelled to enter on the work for whose performance it contracted." *Hannon* v. *County*, 62 Mo. 313, 317.

It is clear, also, that the agency through which the city was proceeding with the work, namely, the mayor and highway commissioner jointly, was special and corporate as distinguished from statutory and governmental. It was not the agency provided by statute. It existed solely by virtue of the contract between the city and Mrs. Eddy.

The point that the contract was irregularly authorized, if such is the fact, is immaterial, because it was certainly one within the power of the city to make (*Kelley* v. *Kennard*, 60 N. H. 1), and hence to ratify (1 Dill. Mun. Corp., ss. 139, 463; 2 *Ib.*, s. 968; Elliott R. & S. 357, 358, 359; Will. Mun. Liab., s. 14; 1 Am. & Eng. Enc. Law 1182, 1183, 1184, 1185, 1195, 1196, 1213, and notes; *Grant* v. *Beard*, 50 N. H. 129, 132, 133; *Carpenter* v. *Nashua*, 58 N. H. 37; *Thayer* v. *Boston*, 19 Pick. 511; *Cranshaw* v. *Roxbury*, 7 Gray 374; *Neff* v. *Wellesley*, 148 Mass. 487; *Dempsey* v. *Chambers*, 154 Mass. 330; *Norton* v. *New Bedford*, 166 Mass. 48); and there was abundant evidence for the jury of such ratification. *Thayer* v. *Boston*, 19 Pick. 511, 516.

The suggestion that the work was actually done by the highway commissioner in the character of a statutory agent, and that the relation of the mayor to it was merely advisory, is contrary to what must be assumed to be the fact for the purposes of the present case, namely, that the mayor "superintended" and "directed" the work "jointly" with the commissioner. At least, there was evidence for the jury that the work in question was prosecuted out of the statutory course by a special agency representing the city. *Collins* v. *Greenfield*, 172 Mass. 78, 81.

2. But the theory upon which the opinion of the majority primarily rests is, that chapter 186, Laws 1891, creating the Concord highway district, confers upon the highway commissioner named therein exclusive charge of the construction and repair of highways, and that the city was powerless, however advisable or necessary, to entrust the work in question to a special agency. The act in this respect merely declares that the highway "commissioner shall have charge," etc. There are no express terms of exclusion.

I cannot assent to the proposition that, because the legislature has provided a highway district and commissioner for the city of

Concord in order to secure maintenance of the highways therein according to the statutory standard and for the benefit of the general public, the city cannot in its corporate character undertake special highway improvements, not inconsistent with the rights of the public at large, for its local advantage and profit, and through its own agents. 13 Harv. Law Rev. 441, 638; 14 *Ib.* 20, 116; 34 Am. Law Rev. 505; *Gilman* v. *Laconia,* 55 N. H. 130, 131, 132.

Towns and cities do not exist as subdivisions of the state and for governmental purposes merely. "The primary and fundamental idea of a municipal corporation is an agency to regulate and administer the internal concerns of a defined locality, in matters peculiar to the places incorporated, or at all events not common to the state or people at large." 1 Dill. Mun. Corp., *s.* 21; Elliott R. & S. 326; Will. Mun. Liab., *s.* 27. Municipalities have peculiar local interests in the highways within their borders. "For all purposes of construction and repair, towns stand in a position [with respect to their highways] which differs in no substantial respect from that of an owner of the fee; their control of the premises is so far absolute and exclusive." *Gilman* v. *Laconia,* 55 N. H. 130, 131; *Hooksett* v. *Amoskeag Co.,* 44 N. H. 105; *Troy* v. *Railroad,* 23 N. H. 83. The legislature has carefully safeguarded these local interests, and left to municipalities, with respect to them, the fullest latitude of action. "Towns may . . . vote such sums of money as they shall judge necessary . . . to lay out, build, and repair highways." P. S., *c.* 40, *s.* 4. The money raised and collected for highway purposes shall be expended by the surveyor of highways, "or agents appointed for the purpose by the selectmen." Laws 1899, *c.* 29, *s.* 3; P. S., *c.* 73, *s.* 6; G. S., *c.* 66, *s.* 22. "Towns may, by vote or by-law, authorize their selectmen to contract for keeping their highways and bridges, or any part thereof, in repair for a term not exceeding five years." P. S., *c.* 73, *s.* 7; *Gilman* v. *Laconia,* 55 N. H. 130, 131. See, also, *Thompson* v. *Fellows,* 21 N. H. 425; *Bradford* v. *Newport,* 42 N. H. 338. These statutes and decisions show that in providing for surveyors, road agents, and highway commissioners, it has never been understood by the legislature or courts that such surveyors, agents, and commissioners were exclusive, so that towns could not appoint special agents and make special contracts for the improvement of the highways within their borders in furtherance of their local and corporate interests. By the statute law of Massachusetts it is provided that the money raised for the making and repairing of highways shall be expended by the road agents, etc. Mass. P. S., *c.* 52, *s.* 3. Yet it has been repeatedly held

" that a town, although it has duly chosen surveyors of highways,
may from time to time, or for special reasons or occasions, under-
take to repair its ways and bridges in some other than the regular
and statutory manner, and may select and employ men as its
agents for this purpose." *Pratt* v. *Weymouth*, 147 Mass. 245;
*Hawks* v. *Charlemont*, 107 Mass. 414; *Sullivan* v. *Holyoke*, 135
Mass. 273; *Deane* v. *Randolph*, 132 Mass. 475; *Tindley* v. *Salem*,
137 Mass. 171, 173; *Waldron* v. *Haverhill*, 143 Mass. 582; *Brook-
field* v. *Reed*, 152 Mass. 568; *Collins* v. *Greenfield*, 172 Mass. 78,
81; *Butman* v. *Newton*, 179 Mass. 1. See, also, *Woodcock* v. *Calais*,
66 Me. 234; *Goddard* v. *Harpswell*, 84 Me. 499. Accordingly,
the city in the present instance might have appointed Mrs. Eddy
its agent, or contracted with her, to make the improvements in
question. *Pratt* v. *Weymouth, supra; Brookfield* v. *Reed, supra;
Royalton* v. *Turnpike Co.*, 11 Vt. 311, 322, 323. "Nor is there
any reason in law or equity why a city should not be allowed to
make a public officer its agent." *Benjamin* v. *Wheeler*, 15 Gray
486. The defendant city had the right, therefore, to make its
mayor and the highway commissioner, singly or jointly, its agents
for the purpose of the improvements in question, if it believed
such course would better subserve its interests than to have the
improvements directed by the highway commissioner in his charac-
ter as a public officer of the state at large. *Woodcock* v. *Calais*,
66 Me. 234; *Goddard* v. *Harpswell*, 84 Me. 499; *Deane* v. *Ran-
dolph*, 132 Mass. 475; *Pratt* v. *Weymouth*, 147 Mass. 245, 254;
*Collins* v. *Greenfield*, 172 Mass. 78, 81; *Butman* v. *Newton*, 179
Mass. 1. The view that the authority of the highway commis-
sioner is exclusive, and that the city of Concord is powerless to
undertake to make such improvements as those in question except
with his consent and under his control and direction, however
desirable that it should be otherwise, is so unsound in principle,
and might be so embarrassing and even disastrous in practice,
that the legislature should not be presumed to have intended
to confer such exclusive power, especially in view of the statu-
tory provisions already referred to clearly indicating a general
legislative policy to the contrary.

3. Finally, it appears in express terms that the city undertook
the work "for its own profit." It thus appearing that the improve-
ment in question was voluntarily undertaken by the city, out of
the statutory course, by its own agents, and "for its own profit,"
I cannot perceive why the authorities cited at the outset, and
which state "the law, not only of this jurisdiction, but of every
jurisdiction where the common law prevails" (*Rhobidas* v. *Con-
cord*, 70 N. H. 90, 116), do not apply with full force.

Independently of authority, upon principle, no satisfactory rea-

son appears why a municipality voluntarily undertaking work like that in question, by its own agents, and "for its own profit," should stand any different with respect to liability for its negligence in the prosecution of such work than a private corporation or individual. It is easy enough to understand why municipalities, with respect to acts which they do under state compulsion, with state agents, and for the general good, should enjoy the same immunity as the principal sovereignty; but it is difficult to see why they should be exempt from liability for the consequences of their voluntary acts, by their own agents, and for their own profit.

. Furthermore, the doctrine of governmental agency and sovereign immunity cannot, it would seem, be extended so as to exempt municipalities from liability for negligence under such circumstances as are presented in this case, consistently with the exceptions to that doctrine already firmly established in this jurisdiction.

(1.) It is the law of New Hampshire that a municipality is liable for the negligence of its agents in the voluntary construction or repair of sewers. *Rowe* v. *Portsmouth*, 56 N. H. 291, 293. I see no reason why they should not be equally liable for negligence in the course of equally voluntary work upon their highways, by their own agents, and for their own profit.

(2.) It is also the law of this state that municipalities are liable if, in the construction or repair of highways, they injure the proprietary rights of others by flooding their premises with water, notwithstanding the duty to construct and repair highways is "imposed," and, as it would seem, notwithstanding an agency for this purpose is provided by statute. *Gilman* v. *Laconia*, 55 N. H. 130; *Parker* v. *Nashua*, 59 N. H. 402; *Rhobidas* v. *Concord*, 70 N. H. 90, 112. I cannot see that it makes any difference in right whether the injury is proprietary or personal, by water or steam (*Rhobidas* v. *Concord*, 70 N. H. 90, 115), nor whether inflicted within the highway limit or just outside of it, so long as it results, not from a mere passive defect in the highway and through its use as such, but from negligence in the prosecution of work upon it, operating directly and independently of the highway.

(3.) It is also the settled law of New Hampshire that municipalities are liable for negligent acts of their agents (even in the discharge of imposed duties) which affect the private rights of others. *Rhobidas* v. *Concord*, 70 N. H. 90, 110, 115. A traveler upon a highway, in the absence of statute, has no private right to a way free from defects. *Sargent* v. *Gilford*, 66 N. H. 543. Therefore, at common law, he is without remedy for injury resulting from the mere passive condition of the way. But every man

has a private, common-law right not to be injured by the active negligence of another, whether that other be an individual, a private corporation, or a municipality. Will. Mun. Liab., *ss.* 25, 35; *Eastman* v. *Meredith*, 36 N. H. 284, 295; *Mitchell* v. *Railroad*, 68 N. H. 96, 117, 118; *Rhobidas* v. *Concord*, 70 N. H. 90, 96, 117, 118. If, therefore, as claimed, one of the city's workmen so carelessly operated the steam-roller as to frighten the plaintiff's horses and cause them to run away, the plaintiff's private, common-law right not to be injured by the active negligence of another was thereby invaded. Will. Mun. Liab., *ss.* 25, 35; *Gordon* v. *Railroad*, 58 N. H. 396, 398; *Mitchell* v. *Railroad*, 68 N. H. 96, 117, 118. Whether he was so injured was a question upon which he was entitled to go to the jury.

*McMahon* v. *Dubuque*, 107 Ia. 62, 67, 68, 69, seems to be quite in point with the present case. There, sparks were negligently permitted to escape from the smoke-stack of the steam-roller owned and being operated by the city of Dubuque in rolling newly laid macadam on one of its streets on which the lot of the plaintiff abutted, whereby the plaintiff's house with its contents was destroyed. The city contended that it was not liable, because in operating the steam-roller it acted solely for the public and not for any private benefit. The court said, in substance, that there were two very satisfactory reasons why it must be held to answer in damages for its negligence: (1) It was engaged in doing the work from which the injury resulted with its own instrumentality; (2) the work was voluntarily assumed and carried on for compensation. " Mr. Dillon thus states the rule: ' The liability of the corporation for its own negligence, or that of its servants, is especially clear, and in fact indisputable, where it has received a consideration for the duties performed, or where, under permissive authority from the legislature, it voluntarily assumes and carries on a work or undertaking from which it receives tolls or derives a profit.' 2 Dill. Mun. Corp., *s.* 981. The city was authorized to make the improvement, but was not bound to undertake it with its own instrumentalities. Having done so, it incurred the same liability an individual would have done in performing like work. We have found no authorities precisely in point, but the principle is so just that none are required. It finds analogy in the cases holding municipalities owning and operating water and gas works, docks, piers, and other property to the same liability as individuals or private corporations with similar ownership and performing like duties. In operating the steam-roller the city was acting peculiarly for the benefit of the municipality, and in a way to enable it to exact compensation from property owners within its limits. Its liability similar

to that of an individual if engaged in doing the same work is within the principle approved by the authorities generally."

The plaintiff should have been permitted to go to the jury, and the exception should be sustained.