Coös,   }
May 2, 1911. }

## GATES, *Adm'x,* v. MILAN.

Where a town appropriates a sum of money sufficient to secure state aid for its highways and is permitted by the governor and council to prosecute the work of permanent highway improvement within its boundaries, it acts in a public or governmental capacity with respect to such work and is not liable for injuries resulting to a laborer from a negligent performance thereof.

CASE, for negligence on the part of the defendant town in repairing a highway, whereby the plaintiff's intestate, while employed by the defendant as a laborer in making the repairs, received fatal injuries.    The declaration alleges that the town was doing the work voluntarily under the provisions of chapter 35, Laws of 1905, and chapter 60, Laws of 1907.    The defendant demurred to the declaration, and the questions of law raised thereby were transferred without a ruling from the December °term, 1910, of the superior court by *Pike,* J.

*Sullivan & Daley* (*Mr. Sullivan* orally), for the plaintiff.

*Rich & Marble* (*Mr. Marble* orally), for the defendants.

WALKER, J.    It has been decided by numerous cases that a town in the performance of the duty of repairing its highways (P. S., *c.* 75, *s.* 1) acts in a public or governmental capacity.    "The liability of towns in respect to highways does not differ in character

or extent from that which would attach to the state if it provided and maintained highways directly. It depends upon the same conditions. It is limited to that which the state permits, as set forth in the statutes on the subject." *Sargent* v. *Gilford,* 66 N. H. 543. See *Hall* v. *Concord,* 71 N. H. 367; *O'Brien* v. *Derry,* 73 N. H. 198, 203; *Wheeler* v. *Gilsum,* 73 N. H. 429. It has also been determined that towns possess a private corporate capacity in accordance with which they perform certain acts as a private corporation might, and in consequence of which their liability for damages to others is tested by the principles applied to private persons. *O'Brien* v. *Derry, supra; Lockwood* v. *Dover,* 73 N. H. 209. "So as to the nature of municipal corporations, the theory of their dual character is too firmly imbedded in the common law to be removed, except by the law-making power." *Rhobidas* v. *Concord,* 70 N. H. 90, 114. When they act in a private capacity, they are subject to the same legal obligations as a private corporation; when they exercise purely governmental functions, they are not ordinarily and in the absence of express statutory authorization held responsible in damages for injuries suffered by others in consequence of their negligent performance of those functions. "The recognized rule for determining whether a city or town is responsible for the acts of any particular officers or agents is the character of the duty in the performance of which they were engaged at the time of the injury. If it is a public, governmental duty, in the performance of which the corporation is clothed with sovereignty, then the officer is not to be regarded as the agent of the corporation, for whose negligence it can be held responsible. . . . But if it is a private, municipal duty,—one voluntarily undertaken by the corporation for its particular local advantage or pecuniary profit,—then the officer, as respects that duty, is the agent of the corporation, for whose negligence it is liable, as in the case of private corporations or parties." *Lockwood* v. *Dover, supra,* 213.

It is practically conceded by the plaintiff that if the defendant had been engaged in the performance of its imposed duty of repairing the highway in question, under section 1, chapter 75, Public Statutes, it would not be liable for the injuries sustained; but is it urged that it is liable because the work it was doing was undertaken by it voluntarily and without legislative compulsion. This contention is based upon the provisions of chapter 35, Laws of 1905, the object of which, as stated in section 1, was "to secure a more uniform system for the improvement of main highways throughout the

state, by the coöperation of the municipalities and the state in providing means therefor, . . . the primary object being to secure an improvement of the highways within the limits of every town in the state." Section 3 requires each town to set apart a certain percentage of the money "annually raised and appropriated for the repair of its highways . . . to be used for the permanent improvement of its main highways, such improvement to be made under the advice of the state engineer." Under this provision alone, it is clear that the town has no option, but must provide for and perform the work of permanent highway improvement within its territory. Section 4 provides that if a town desires "state aid" for such highway improvement, it "shall raise, appropriate, and set apart an additional sum equal to fifty per cent of the amount required to be set apart for the permanent improvements under section 3 of this act," and notify the governor and council of such action. In section 5 the amount of state aid for such town is provided for. Section 6 provides that "the amount of money set apart by such city or town as applies for state aid, as provided for in sections 3 and 4, with the amount apportioned by the governor and council, as provided for in section 5, shall constitute a joint fund for the permanent improvement of such highway or highways within such city or town as the governor and council, and mayor and city councils or such other board as has jurisdiction over highway expenditures of a city, or selectmen of a town, may designate for the permanent improvement of such highways." Section 7, as amended (Laws 1907, c. 60, s. 1), provides: "All work of highway improvement paid for out of said joint funds shall be performed in accordance with specifications provided by the governor and council. Where the amount of the joint fund in any one instance exceeds one thousand dollars, the work shall be done by contract awarded to the lowest responsible bidder, except, however, that upon representation by the proper authorities of any town or city that such town or city owns or will provide suitable and sufficient tools, utensils, and machinery for the execution of the work in a manner satisfactory to the governor and council, the governor and council may, if they deem it expedient, permit such town or city to perform the work within its boundaries upon such terms as may be acceptable to the governor and council."

In accordance with these provisions of the statute, the defendant town, according to the plaintiff's declaration, raised and appropriated the additional sum required in section 4 in order to receive the bene-

fit of the state aid, and was duly permitted by the governor and council to perform the work of the permanent. highway repair contemplated. It thereupon entered upon the execution of the work, during which the plaintiff's intestate, a laborer upon the road, was injured by the alleged negligence of the defendant in its method of doing the work. Upon this state of facts the plaintiff claims that the defendant is liable, because it was not compelled by the legislature to do the work, but voluntarily sought the privilege of doing it. While it was not compelled to do it, as it undoubtedly might have been, it accepted the privilege of doing it; and having assumed the obligation, did it become a mere contractor with reference to the work and liable in all respects as an individual, or did it still act as a governmental agency for whose wrongful acts it is not responsible? In other words, does the mere fact that a town performs the work of highway repair under a statute that does not impose that duty upon it, but permits it to do it, determine the question of its liability and render it responsible for its acts, like a private corporation or an individual? If the defendant had not accepted the state aid and had expended the money it was obliged to set apart under section 3 for permanent highway improvement, it would have been obliged to expend the money for that purpose; and if it had been doing precisely the same work of repair under section 3 when the plaintiff's intestate was injured, its non-liability would hardly be questioned. The plaintiff's contention therefore rests upon the simple proposition that the statute authorizing the work of repair to be paid for from the joint fund permitted the defendant to do the work if it desired to.

But the absence of a legislative mandate to a town to perform a public, governmental service may not be determinative of the character it assumes when, under a permissive statute, it performs the service. If it voluntarily exercises authority with which the legislature has invested it, without requiring its exercise, it may still be performing a governmental function from which it derives no special advantage. If certain repairs are necessary to be made on a highway, the town in doing the needed work is rendering a public service, whether its authority to do it is mandatory or permissive. The authority, however expressed, is vested in it as a state agency and not as a private corporation. *Curran* v. *Boston,* 151 Mass. 505; *Tindley* v. *Salem,* 137 Mass. 171. The fact that permission is granted to a town to do a certain act has some evidentiary bearing on the question whether the act is governmental or private. If the

performance of the act is required, it might be difficult to find that the legislature deemed the act to be of a private character relating merely to the local affairs of the town; for it would be unreasonable to infer that the legislature intended to impose a duty upon the town which it did not regard of public governmental importance. But when the authority to do the act is permissive, it is not illogical or unreasonable to find, in a special instance, that the legislature intended to invest the town with authority to do a governmental act which it did not require the town to do. If a town is authorized to perform a public service, it does not become any the less a public service because the town has an option to perform it or not as it may choose. It may act with reference to the particular work which it is permitted to do as the authorized agent of the state, as well when its authority is permissive as when the duty is imposed upon it. Indeed, it might be said that when it consents to perform work of an admitted governmental character, the public duty to do it is imposed upon it. Assuming to perform the public service, it is not at liberty to prosecute the work as it sees fit or to abandon it entirely—a liberty which an individual or private corporation possesses with reference to their private affairs. The simple fact, therefore, that the legislature permitted towns to make the permanent repairs provided for in the act of 1905 does not prove that it intended to invest towns in their private capacity with authority to perform that governmental service, or that it regarded the work to be done as of a private nature. It is clear from even a cursory reading of the act that the legislature was providing for a general highway improvement throughout the state. It believed that it would promote the public welfare; and there is little evidence that the legislature, by permitting towns to do the work, understood that it was dealing with towns in any different capacity than that which they possess with reference to ordinary highway repairs. They are agencies of the state (*Wooster* v. *Plymouth*, 62 N. H. 193); and as the state may require of them in their public capacity the performance of public services, there is no sound reason why its permission to them to do the same service was intended to apply to them in their private capacity.

The liability of municipal corporations has been affirmed or denied for a variety of reasons, which in the last analysis seem to be effective as evidentiary facts of the legislative intention. In *Gross* v. *Portsmouth*, 68 N. H. 266, the defendant's liability for injuries to a traveler upon the highway, caused by the negligence

of water commissioners in filling the trenches in a street, was denied upon the ground that the commissioners were officers over whom the defendant had no control, though they were not engaged in a governmental service. That fact alone was regarded as determinative of the question of legislative intent. It was deemed conclusive evidence. But this conclusion was overruled in *Lockwood* v. *Dover, supra,* where it is said (*p.* 214): "We are therefore of the opinion that it was not the intention of the legislature to relieve the city of Portsmouth from its common-law liability, if it could legally do so, or to make the acts of the commissioners in the construction and management of the water-works acts of public officers, but rather to provide for a particular board of officers who should be the agents of the city in the construction and management of the works if the city adopted the provisions of the act, and that the conclusion reached in *Gross* v. *Portsmouth* as to this matter is not to be followed."

In connection with the fact that a town cannot under the statute control the agency by which the work is done, in a particular instance, the further fact that it derives no special benefit from its execution is often regarded as important. *Edgerly* v. *Concord,* 62 N. H. 8; *Wakefield* v. *Newport,* 62 N. H. 624, 625; *Hall* v. *Concord,* 71 N. H. 367; *O'Brien* v. *Derry, supra.* But it is only important as evidence to be considered in ascertaining the ultimate fact of the intention of the legislature as to the character of the acts required or permitted. It may tend to show that they were deemed to be of a private rather than a public nature. But when they are conceded to be of the latter character (as in the case of highway repairs), the performance of which is imposed upon towns, any special pecuniary advantage accruing to the towns therefrom is of little or no importance. *Hall* v. *Concord, supra.* When it is determined that the character of the service which towns are empowered to perform is governmental, the town acts as, and exercises to a limited extent the sovereignty of, the state (*Sargent* v. *Gilford,* 66 N. H. 543); and in the absence of clear statutory authorization, it is not liable for negligence in the performance of that function.

"To charge a corporation with damages for injuries arising from misfeasance and neglect of duty, no statute fixing the liability, there must be acts positively injurious committed by authorized agents or officers in the course of the performance of corporate powers, or in the execution of corporate duties, in distinction from those done in a public capacity as a governing agency." *Edgerly* v. *Concord,* 62 N. H. 8, 19; *Eastman* v. *Meredith,* 36 N. H. 284;

*Clark* v. *Manchester,* 62 N. H. 577; *Doolittle* v. *Walpole,* 67 N. H. 554.    When it appears that the statute makes a town liable for its negligence, the character of the duty undertaken by the town, its special advantage derived therefrom, and its voluntary or involuntary performance of the work are not material on the question of its liability for negligent acts; these facts are only important as evidence in reaching a conclusion as to the meaning and scope of the statute.    In that view and for that purpose they may determine the question whether the town was acting as a governmental agent or in its private capacity, when the town's liability depends upon the solution of that question.

In this case the character of the work of repairing the highway was clearly governmental; and the evidence does not show that the legislature permitted the defendant to do the work in any other capacity than that of a state agent.    As a state agent, it was bound to perform the legislative duty of deciding what general repairs should be made upon its roads and the ministerial duty of making them.    It had the tools and machinery necessary for that purpose and it was competent to do the special work of permanent repairs as the representative of the state, which the state with the concurrence of the town decided ought to be done for the public benefit. It was not employed as a private contractor to perform a public work, but as an agency of the state already charged with the duty of doing almost identical public work.    It would not be expected under such circumstances that the legislature would seek its services as a private corporation to perform the governmental work of permanent highway repair.    Because it was a convenient public agency to make limited repairs, it was deemed to be an equally convenient public agency to make more extensive repairs of the same character.

*Demurrer sustained.*

All concurred.