## TOWN OF HANOVER v. BURROUGHS.

(Circuit Court of Appeals, First Circuit. July 27, 1914.)

No. 987.

HIGHWAYS (§ 198*)—STATE AID—DEFECTS—INJURIES TO TRAVELERS—TOWNSHIP LIABILITY—STATUTES.

Laws N. H. 1903, c. 54, § 6, provides that no claim shall accrue against the state and no action be maintained against any town in which a road is situated on which the work of construction is done or repairs made, in whole or in part, at the expense of the state for or on account of any injury to persons or property on any such road. Laws N. H. 1905, c. 35, § 1, declared that it was enacted to secure a more uniform system for the improvement of main highways throughout the state by the co-operation of municipalities, and provided for the appropriation of money by the state for highway construction and repair; section 8 declaring that all highways within any city or town improved by the expenditure of a joint fund created by contributions by the municipality in the state should thereafter be maintained by the municipality within which the highway was located to the satisfaction of the Governor and Council. Held, that where plaintiff was injured by failure of a town to provide a railing along a dangerous embankment on a road which had been designated as a continuous state highway under the act of 1905, and which had been repaired and was undergoing repairs at the partial expense of the state, it was within the description of Laws N. H. 1903, c. 54, § 6, and the town was therefore not liable for the injury.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 504–507; Dec. Dig. § 198.*]

In Error to the District Court of the United States for the District of New Hampshire; Clarence Hale, Judge.

Action by William A. Burroughs against the Town of Hanover. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Allen Hollis, of Concord, N. H. (Williams W. Thayer, of Concord, N. H., on the brief), for plaintiff in error.

Henry F. Hollis, of Concord, N. H. (Alexander Murchie and Hollis & Murchie, all of Concord, N. H., on the brief), for defendant in error.

Before PUTNAM, DODGE, and BINGHAM, Circuit Judges.

DODGE, Circuit Judge. Burroughs, a citizen of Vermont, recovered judgment in the New Hampshire District against the town of Hanover, in that state, for damages sustained by him on June 7, 1910, while driving on a highway within that town, because of the absence of a railing to safeguard a dangerous embankment adjoining the road. Under New Hampshire statutes, as they stood prior to 1903, towns were liable for damages to travelers by reason of dangerous embankments and defective railings, rendering a highway unsuitable for travel thereon.

The town, seeking here to reverse the judgment, has not contended that there was no evidence to warrant the jury in finding that the highway defect existed as alleged, and caused Burroughs' injuries.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

215 F.—52

It contends that, even if these were the facts, it cannot lawfully be held liable, because this was a "state aid" highway, in process of construction under state supervision; and the statutes of New Hampshire have not permitted recoveries against towns for injuries to persons or property on such highways since the enactment of section 6 of chapter 54 of the New Hampshire Laws of 1903.

This section reads as follows:

"Sec. 6. No claim shall accrue or exist against the state, and no action be maintained against any town in which a road is situated on which the work of construction is done or repairs made, in whole or in part, at the expense of the state, for or on account of any injury to person or property on any such road; nor shall any indictment or information be maintained against any town on account of the condition of such road."

The town asked the court to rule that it was not liable for the plaintiff's injury under New Hampshire laws, and that on all the evidence the plaintiff could not recover, as matter of law. Of the refusal so to rule, and to direct a verdict in its favor upon these grounds, it now complains as error.

There is no dispute that the road upon which Burroughs was driving when injured was a road on which work of construction was done or repairs were made, in part, at the expense of the state, in accordance with provisions contained either in the statute referred to or in other subsequent state legislation. Burroughs denies, however, that the section quoted, taken in connection with the legislation of which it forms a part, had the effect of exonerating the town from the liability in respect to the highway in question, imposed upon it by the laws of the state in force before the above act of 1903. Since 1893, those laws had made towns liable for defects of specified kinds, including dangerous embankments and defective railings, rendering their highways unsuitable for travel. And from 1786 to 1893 they had been under a statutory liability for highway defects, imposed without specific restriction.

It will be necessary, first, to examine briefly the other provisions of the act in question and their application at the time of enactment. The act is entitled:

"An act to provide for a more economical and practical expenditure of money appropriated by the state for the construction and repair of highways."

It contains 28 sections. Section 1 commits the general supervision, control, and direction of the business to which the act relates to the Governor and Council. Section 2 constitutes the counties of Coos, Carroll, and Grafton, a district for the purposes of the act (Hanover is in Grafton county). Section 3 provides that such appropriations and expenditures for construction and improvement of highways within this district, as may be made on the part of the state, shall be made with reference to a system of continuous ways adopted and constructed to facilitate and increase public travel to and from the mountain and lake region in the district. Section 4 provides for the taking and appropriation by the Governor and Council, for the purposes of the act, of public highways then in use as such, being in the routes hereinafter specified, for construction, repair, and maintenance, providing also

that no liability against the state or any town shall be created, nor any compensation become due for property rights or interests taken within the limits of highways so taken. Section 5 designates certain roads within the district established by section 2, provides that they shall be state highways and be constructed and maintained by the state, upon acquirement by assignment or appropriation of the right of way for them from owners of unappropriated lands over which they may pass, and designates the procedure for such appropriation. Then follows section 6 as above quoted.

Sections 7–23 of the act may be more briefly referred to. Sections 7–12, inclusive, require construction and repair work by the state on the highways and roads aforesaid to be done by contract after competitive bids, under the supervision of a civil engineer to be designated for the district by the Governor and Council, authorize the Governor and Council to act without competitive bids in case of emergencies, impose duties of inspection upon said engineer, fix his compensation, and authorize division of the roads mentioned in the act into sections or groups, if required for the purposes of efficiency and economy. Sections 13–19 provide for the location of a new highway within the district from the base of Mt. Washington to a point in Franconia. Section 20 provides that:

"No claim shall accrue, or exist, and no action shall be maintained against any town through which (the new highway above mentioned) * * * shall pass, nor shall any indictment or information be maintained against any town on account of the condition of said road."

Section 21 provides, upon terms like those of section 4, for the taking and appropriation of existing roads and highways then in use as public highways within the route selected for the above new highway. Sections 22 and 23, provide money to pay indebtedness already incurred by a commission, previously appointed under an act of 1901, to lay out and construct a road in said district, called the Jefferson Notch road, and for its improvement according to section 13 and other provisions of preceding sections.

Section 24, which is of rather more importance for the purposes of the questions here raised, begins as follows:

"Subject to the foregoing provisions and regulations, the following sums shall be, and are hereby appropriated for the construction and repair of the highways as hereinafter specified, viz."

Then follow 34 numbered clauses, each appropriating a specified sum for a specified road or roads. The appropriation in clause (1) is for completion of the Jefferson Notch road, and for construction of parts of the new highway provided for in sections 13–19. That in (2) is for construction, changing, and repairs of a highway in Dixville Notch, in continuation of work begun under a former act passed in 1901. That in (3) is for construction of a road in Errol "provided other parties shall contribute [a specified sum] for the same purpose." That in (4) is for construction and repair of a road in Woodstock, begun under a prior state appropriation, but not completed. That in (5) is for repairs of a highway lately built by the state in Whitefield and Dalton. That in (6) is for repairs of highways generally, in Dix-

ville. Those in clauses (7)–(15), inclusive, are each for repairs of specified roads in a specified town, location, or grant. That in (16) is for repairs of a state road in Moultonborough. Those in (17)–(31), inclusive, are each for repairs of a specified road in a specified town. That in (32) is for repairs of the roads generally, in Albany. That in (33) is for construction of a road in Bartlett, provided the town and other parties furnish an equal sum, the town thereafter to maintain the road. That in (34) is for construction of a road in Benton, provided the town and other parties contribute an equal sum.

Sections 25 and 26 contain provisions not material for the present purpose.

Section 27, subject to the provisions of sections 1–12, inclusive, so far as applicable to the localities and subjects, makes five appropriations, also in numbered clauses, for "the construction and repairs of the highways hereinafter specified, outside the district named in section 2," "which highways do, now, or will when constructed, lead to, or from, public waters." (1) is for an existing state road in Newton and Kingston. (2) is for another state road in Temple and Peterborough. (3) is for construction and extension of a new road in Sunapee, provided the town appropriates an equal sum. (4) is to aid the town of New London in the repairs of a road in that town. (5) is for construction of a road in Newbury, provided the town appropriates an equal sum.

Finally, section 28 repeals all inconsistent acts, and parts of acts, and provides that the present act take effect upon its passage.

With regard to the provisions of the above act, it is significant for the purposes of the present inquiry:

First, that while state expenditure on any road in the district established is to be with reference to the system of continuous highways, and while every road mentioned in the first 26 sections (whether a state road made such by the act, or referred to as already a state road, or a town road designated for repairs or construction) is a road within the district, there are no provisions confining the contemplated system within the limits of the district.

Second, that the first 26 sections put under state control and supervision, not only every state road within the district for which state money is appropriated for repairs or construction, but also a great many town roads within the district, being those the construction or repair whereof is provided for, in whole or in part, at the expense of the state. Thus, in Dixville and Albany (clauses 6, 32, § 24), the state money is to be spent on the town roads generally, neither town being required to contribute; in each of the more than 20 towns named in clauses (7–15), (17–31), it is to be spent on a specified town road, and without requiring the town to contribute. In Errol, Bartlett, and Benton (clauses 3, 33, 34) it is to be spent on specified town roads, on condition that the town or other parties contribute, and Bartlett is also to keep the constructed road in repair.

Lastly, that expenditure of state money is also authorized outside the district (section 27), but under the same state supervision and control, in construction of two of the five roads designated, which are al-

ready state roads (clauses 1, 2), in construction of the two roads designated in Sunapee and Newbury, respectively (clauses 3, 5), each of those towns to contribute, and in construction of a designated town road in New London (clause 4), this expenditure being expressly "to aid the town of New London."

We see no sufficient justification, in view of the above features of the act, for taking the above-quoted language of·section 6 in any sense more restricted than the words used express, according to their natural and usual significance.

For injuries on state roads wholly paid for and controlled by the state, though of course lying within town limits, it was obviously just and natural to provide expressly that there should be no claim upon the state, and that no town should be liable. And if the state was to take control of the construction and repair of so many town roads, and spend its money to make or keep them, it was equally just and natural to provide expressly against the accruing of claims against the state for injuries upon such town roads. The Legislature, in the same section, and in express language, which taken by itself admits of no other construction, has also forbidden the maintenance of actions for injuries upon such town roads, against the towns wherein they lie. We think the conclusion unavoidable that it meant no less than it there said.

Towns were liable for injuries from certain kinds of highway defects, according to the legislation then in force, if the injury was sustained "upon any highway" within their limits. It will not be denied that section 6 made an effectual exception as to state highways within their limits. The reason for making the exception can only have been that a town could not justly be held liable for defects in a road never within its control, or removed from its control by the state under legislative authority, so as to leave no duty of keeping the road in condition upon it, or of providing the money therefor. The reasons which may be supposed to have prompted an exoneration of towns from liability for highway defects on state-aided roads within their limits obviously differ only in degree. Though such a road remains a town road, because the town is no longer to have the same control of its maintenance, or of the money spent thereon, as in the case of its other roads, it ought not to remain under the same responsibility for its condition. The responsibility, like the control, ought to be at least divided with the state, if either was to be liable. The extent to which responsibility should be removed from the towns was for the Legislature to decide, and it may well have preferred to eliminate the questions involved in any attempt to determine the precise limits of the responsibility to remain upon the towns, under the new system, by removing the responsibility altogether.

These considerations prevent us from yielding to the arguments in favor of a narrower construction of section 6. It is urged on Burroughs' behalf that the position of section 6, between two sections dealing only with state roads, not with state-aided roads, the express exemption of the towns concerned from liability in respect of the new Mt. Washington-Franconia road, contained in section 20 above quoted, and the express provision of section 27, bringing the roads outside the

district named in that section within the provisions of sections 1–12, and thus within section 6, forbid the supposition that the legislative intent was to make the exemption of the towns general as to state-aided roads within them, and require the conclusion that state roads only were meant. We do not find these considerations strong enough to warrant such a conclusion. Still less persuasive do we find the suggestions: (1) That the synoptical headings of the different sections of the act printed in order after the title, and repeated in the margin opposite the respective sections, amount to a contemporaneous construction of the act, and fail to attribute to section 6 the construction which we have thought its plain meaning; (2) that section 6 would have been a complete defense in Gates v. Milan, 76 N. H. 135, 80 Atl. 39, 35 L. R. A. (N. S.) 599, but is not referred to in that case. The defendant town had in the case another complete defense. It is said that such a construction of section 6 must lead to inconvenience and injustice, in view of the large proportion of town roads which have become state-aid roads; but we think the Legislature might well have believed no less injustice likely to follow if the towns were left still liable for defects in their roads caused or permitted by persons not acting under their authority or control.

If, therefore, Burroughs' injuries had been sustained on a road for which the above act provided any state aid, we should have regarded the town as exonerated by section 6. But the road whereon he was injured, though within the district which that act established, was not a road anywhere mentioned in the act; and the next inquiry is whether or not it had been brought within the provisions of section 6 by the subsequent enactments before his accident.

Within a month after the approval of the above act, the same Legislature passed chapter 133 of the Laws of 1903, "providing for a state system of highway construction and improvement, and for the appointment of highway engineers." Under this act (sections 4, 6, 7) engineers appointed by the Governor and Council were to prepare a map of —

"a system of continuous main highways which shall include every town in the state, and indicate the highway connections and relations of such towns with each other and with the system or lines of continuous main highways to be outlined as aforesaid."

From these maps the engineers were to prepare plans, under the direction of the Governor and Council—

"for the future construction and improvement of highways by state aid or state control, either with or without co-operation of the towns or cities."

The Governor and Council were then to prepare a bill for submission to the next general court, which, besides detailed provisions for inaugurating a system of state work and control in the future construction and repair of local and state highways, should also—

"have provisions governing the administration of that business as far as it may be assumed by the state, and shall designate the method by which the funds necessary for carrying out the provisions of the proposed act shall be provided, whether entirely by the state, whether in part by the state and in part by the towns, whether by current assessment and appropriation, whether

by issuance of bonds, or whether such funds shall be supplied otherwise than by the methods above indicated."

They were also to prepare and submit to the next general court a state highway law, whereby state aid to municipalities on account of special necessities, as well as state work on highways to be done independently of the local authorities, should be governed by general statutes adapted to the requirements of all localities in the state. Nothing enacted by chapter 133 was to repeal or modify any of the provisions of chapter 54, except as to the appointment of highway engineers to act within the district which chapter 54 established.

Next came chapter 35 of the Laws of 1905, section 1 whereof declares the object of the act to be—

"to secure a more uniform system for the improvement of main highways throughout the state, by the co-operation of the municipalities and the state in providing means therefor, and for the more efficient and economical expenditure of moneys appropriated for highway construction and repair, the primary object being to secure an improvement of the highways within the limits of every town in the state."

The act then vested the general control and supervision of the business to which it relates in the Governor and Council, "so far as the state is concerned," and in the local authorities having charge of highway expenditures, so far as the different municipalities are concerned, and in the county commissioners, so far as unincorporated towns or places are concerned. Municipalities were directed to set apart certain percentages of their valuations, to be used for permanent improvement of their main highways, under the advice of the state engineer. Any municipality desiring state aid for permanent improvement of its highways, in addition to improvements provided for by the amounts so set apart was to obtain it by setting apart a further sum equal to 50 per cent. of the obligatory amount, and making an application for state aid, with notice that the further sum required as above had been so set apart. For each dollar set apart by the municipality a sum ascertained according to its valuation was to be apportioned by the Governor and Council from a state fund, and the latter sum, together with the total amount set apart by the municipality, was to be expended as a joint fund upon permanent repair of the highways within the municipality, according to detailed provisions in the act. Section 8 provided:

"All highways within any city or town improved by the expenditure of said joint fund shall thereafter be maintained by the city, town or place within which it is located, at the expense of the town, and to the satisfaction of the Governor and Council, and in case any town or place shall neglect to make repairs ordered by the Governor and Council, such repairs shall be made under the direction of the Governor and Council, at the expense of the state, and the cost thereof shall be added to the state tax for that town or place for the next year."

Appropriations by the state were provided for to secure the permanent improvement of highways according to the above provisions, and so much of the amount thus appropriated as was not required for the purposes of the above provisions and the expenses of administering the act was to be used for the purposes of certain state highways specifically described in section 11, and for such other state highways as the Gov-

ernor and Council should deem best. Section 11 designated as state highways certain roads, or parts of roads, not made state highways by the earlier acts. Section 12 provides that a certain road between Conway and Chatham should be treated and regarded as a state road for the purposes of maintenance. The act was to take effect upon its passage, and all inconsistent acts, or part of acts, were repealed.

There was further legislation upon the subject in 1907. Chapters 60, 104, and 139 of the Laws of that year amended or supplemented chapter 35 of 1905 in certain particulars not important for the present purposes. The same chapter was still further amended by chapter 155 of the Laws of 1909, which next followed. The amendments made by the latter act do not require special reference, except as follows: They designated still other roads as state highways, some of the roads. so designated being outside of the district established in 1903. Seven additional sections, 15–21, inclusive, were added. In these it was provided, in substance, that the Governor and Council should designate three continuous highways from the Massachusetts line northerly. The third of these was to be known as the West Side road, and was to extend along the Connecticut and Ammonoosuc Valleys to a point in Colebrook, being thus partly within and partly without the district referred to. No municipality, through which any of said roads might be designated to pass, was to receive state aid for improvements on its roads elsewhere than on the designated road, until that road should be completed within the limits of the municipality. Municipalities able to pay half were to receive half the cost of improving such roads within their limits from the state. Such roads were to be maintained at the expense of the municipalities within which they might be located, and, if any municipality neglected to make repairs ordered by the Governor and Council, they were to be made at the expense of the state, and the cost added to the state tax. Like the previous acts, this amending act took effect on its passage and repealed all prior inconsistent legislation.

There was no further legislation upon the subject prior to Burroughs' accident, which, as has been stated, was in June, 1910.

The road whereon he was injured had been duly designated on September 17, 1909, as a part of the West Side road referred to in the above act of that year. The highway apportionment of state money for the town of Hanover had been, on December 28, 1909, duly fixed at $2,444.75, the town having appropriated and set aside the requisite amount for state-aid roads within its limits, and having also so notified the Governor and Council, with its application for state aid, on April 29, 1909. On December 22, 1909, the state authorities and the duly authorized officers of the town contracted with the Lane Construction Company for the grading and construction of a section of road within the town, according to specifications which described said section as—

"a portion of the so-called West Side road in the town of Hanover, being the main road from West Lebanon to Lyme, the portion to be improved being as follows: From a point at A, Lebanon-Hanover Line to Lebanon street; B, from corner of Main and Wentworth streets, along College street north, as indicated on the plans mentioned herein, to such point as shall be determined by the state engineer."

Burroughs was injured at a point on the section of road thus described. Work on the roadbed under the above contract had been done at the point where he was injured shortly before his injury, and work under the contract was then still being done, at a point about 1,000 feet further north on the same road. Not until August, 1910, was the contractor's work finished and the road accepted as complete.

The road on which his injuries were sustained was thus at the time a road whereon work of construction had been done, and was still being done, at the state's expense. Designated, as it had been by the Governor and Council, as part of one of the three continuous highways provided for by the sections added in 1909 to chapter 35 of the Laws of 1905, the above work upon it was under the joint control and supervision of the state and town authorities, and paid for out of the joint fund composed of the money set aside by the town and that apportioned to the town and appropriated by the state, all in accordance with the chapter last referred to. The work then in progress upon the road was permanent improvement under the state engineer's advice, and, though a town road, the town was to be under no duty of maintaining it until after that work had been completed. There can be no doubt that chapter 35 of the Laws of 1905 was enacted in pursuance of the general policy, first declared and adopted by chapter 54 of the Laws of 1903, of directing the expenditure of all state money devoted to such purposes with reference to a system of continuous highways, such as section 3 of that act describes. The successive enactments which followed as above further establish and develop the same system, and follow the same plan of placing the control, both of the work and the expenditure involved, in the hands of the state rather than of the local authorities, under general laws adapted to the requirements of all parts of the state. Chapter 133 of the Laws of 1903, which is the act most fully declaring the principal features of the general policy adopted, or to be adopted, expressly provides that nothing in it shall be taken to repeal or modify chapter 54 of the same year, and this left section 6 of that chapter, on which the defendant relies, in full force as part of the general policy referred to. The acts of 1905, 1907, and 1909 are obviously founded on the legislation of 1903, and successive steps in pursuance of the same general policy. No indication is found in them of any intent to repeal or modify the provisions of section 6 above referred to. These are left to stand as part of the general law of the state; and we can see no reason to doubt that they were left effective in the sense above attributed to them, or that they were applicable at the time of Burroughs' injuries to the road and the town here concerned. We think they exonerated the town from liability, and required the rulings as to their effect which were refused at the trial.

This conclusion renders it unnecessary to consider whether or not the evidence was insufficient for recovery, upon any of the other grounds urged.

The judgment of the Circuit Court is reversed, the case is remanded to the District Court for further proceedings not inconsistent with this opinion, and the plaintiff in error recovers its costs of appeal.