Hillsborough,
May 1, 1934.

JAMES E. DOUGLAS *v.* HOLLIS.

*Ivory C. Eaton* (by brief and orally), for the plaintiff.

*John R. Spring* (by brief and orally), for the defendant.

MARBLE, J.    Although a municipal corporation is not liable for injuries caused by the negligent performance of a governmental duty (*Harris* v. *School District*, 72 N. H. 424; *Piasecny* v. *Manchester*, 82

N. H. 458, and cases cited), yet where it acts in a private capacity for compensation it is responsible for the negligence of its agents precisely as though it were a private corporation or an individual engaged in a similar enterprise (*Meredith* v. *Fullerton*, 83 N. H. 124, 128, 129; Hening's Digest, *p*. 1029; Annotation, 64 A. L. R. 1545).

This latter rule is subject of course to the qualification that the private business in which the municipality engages must be within the scope of its corporate powers. When the act complained of lies wholly outside those powers, corporate liability is not imposed. 4 Dillon, Mun. Corp. (5th *ed.*), *ss*. 1647, 1648.

While it is often difficult "to distinguish between a total want of power to engage in an enterprise" and "unlawful minor acts within a general corporate power" (14 Cornell Law Quarterly, 351, 353), no such difficulty is here involved, since in this jurisdiction the right of a municipality to lease parts of a public building not needed for municipal purposes is unquestioned. *Meredith* v. *Fullerton*, 83 N. H. 124, 127, and cases cited. See also P. L., *c*. 122, *s*. 22. That the lease to the lodge in the present case was "incident and subordinate to" the general purpose for which the schoolhouse was maintained is reasonably to be inferred from the evidence. *Curtis* v. *Portsmouth*, 67 N. H. 506, 508.

The problem presented therefore is merely that of a landlord's obligation to keep in reasonably safe condition that portion of the premises retained in his possession and maintained or held open by him for the use of the tenant and his invitees. *Rowe* v. *Company*, *ante*, 127, and cases cited.

The cellarway into which the plaintiff fell is referred to in the record and briefs as a bulkhead or runway. It was in fact an outer passageway or ramp extending from the cellar door near the northeast corner of the building up to the level of the driveway. It was several feet deep at the point where the plaintiff fell and was open and unrailed. The retaining walls were of cement. The entrance to the school and lodge rooms was situated south of this passageway and on the same side of the building. It comprised a flight of five or six steps and a piazza. The bottom step was approximately in line with the cement curb which marked the east end of the passageway. Wheel tracks shown by the photographs used at the oral arguments indicate that cars were driven close to this curb.

Lodge meetings were held each week and members of the lodge and their guests were accustomed to park their cars along the east and north sides of the building near the cellarway. On the night of

the accident the plaintiff, stepping out of the driveway to avoid an automobile, walked between the driveway and the building toward his car and fell into the deep end of the passageway. The car was parked on the north side of the building, headed east, and in line with the corner of the schoolhouse. Parking as "a recognized and common" practice (*Reed* v. *Company*, 84 N. H. 156, 159) is not confined to highways, and the parking of cars in the yard on nights when the lodge rooms were open was naturally to be expected. According to the photographs the yard was a rough school yard open to travel in all directions. The ground in front of the piazza and between the piazza and the cellarway was bare of grass. There was nothing to mark the boundary of the driveway in front of the building except the cellarway and the piazza steps.

Whether under such circumstances the defendant's invitation extended to that part of the premises over which the plaintiff was traveling at the time of the accident was clearly a question of fact. *Cable* v. *Company*, 85 N. H. 258; *Knowles* v. *Company*, 77 N. H. 268, 269.

The defendant moved for a directed verdict, claiming exemption from liability on the ground that the alleged unsafe condition of the premises existed at the time "the tenant took this property." The rule invoked does not prevail in this jurisdiction. In *Berthiaume* v. *Kessler*, *ante*, 305, the landlords were held liable although "There had been no change in the construction [complained of] . . . since the tenancy commenced." The motion was properly denied.

The defendant had installed a light on the piazza, but the side of the piazza facing the cellar entrance was sheathed with boards to form a windbreak. This prevented the light from shining directly on the cellarway. There was testimony, however, that the cellarway could be seen when this light was on. The defendant offered to prove that "the lights out on the piazza, in the hallways and in the lodge rooms were under the control of the Lodge," and that "when the premises were used by the Lodge for any purpose, a member of the Lodge or the janitor turned the lights on and off." This evidence was excluded subject to exception.

The defendant's witnesses testified that the piazza light was on at the time of the accident. The plaintiff's evidence tended to prove the contrary. The plaintiff himself testified: "I was walking along and it was very dark, you couldn't see anything . . . No lights on the front of the building at all."

Those who entered the school yard in the right of the tenant were the defendant's invitees. 11 B. U. Law Rev. 309, 319. To them the

defendant owed "the same duty as would any other landowner to one whom he has invited to come there, that is, the duty of exercising reasonable care to have the common passageways reasonably safe." *Gibson* v. *Hoppman*, 108 Conn. 401, 410. See also *Pickford* v. *Abramson*, 84 N. H. 446, 448, 449. It is true that the defendant could not as a matter of law discharge that duty by intrusting the lodge with the care of the lights. But this does not mean that the proffered evidence was inadmissible.

It could be found that the defendant maintained a dangerous pitfall at a place where it must have understood that those visiting the lodge would believe they were entitled to go. *Cable* v. *Company*, 85 N. H. 258. What due care demanded under the circumstances was obviously a question for the jury. One circumstance which might properly be considered on that issue was the fact that a street lamp, situated near the schoolhouse, threw light on the east side of the building. Equally admissible, as bearing on the care which the defendant might reasonably be required to take, was the evidence that the lights in the hallways, lodge rooms, and piazza "had a separate switch of their own" and were turned on by the lodge whenever the lodge rooms were occupied at night for any purpose. The rule is elementary that due care may be inferred from a party's reliance on the usual conduct of others. *Peppin* v. *Railroad, ante*, 395, and cases cited. See also *Knowles* v. *Company*, 77 N. H. 268, 271.

The plaintiff testified that when he left the building the lights in the hallways were on. If, as the defendant now asserts, the hall lights could not be turned on without also turning on the piazza light (both being controled by the same switch), this evidence was relevant to show that the piazza light was burning at the time of the accident.

The plaintiff arrived at the lodge rooms about eight o'clock in the evening. He testified that it was then "quite dark" and that he didn't notice the cellarway. He had visited the lodge on two other occasions. The issue of contributory negligence was for the jury.

*New trial.*

WOODBURY, J., did not sit: the others concurred.