Merrimack, }
Dec. 7, 1937. }

### SARAH J. GILMAN *v.* CONCORD.

*Willoughby A. Colby* (by brief and orally), for the plaintiff.

*Henry P. Callahan*, City Solicitor (by brief and orally), for the defendant.

ALLEN, C. J. The inquiry relates to a municipality's liability for the wrongful conduct of its agents and servants in carrying out its undertakings. The city was engaged in the performance of a public, governmental function. By the statute then in force (P. L., *c.* 190, *s.* 1) gypsy and brown-tail moths, and their eggs, caterpillars, pupae and nests were declared to be public nuisances. Within certain areas inclusive of highway locations municipalities were required to destroy the nuisance as an imposed duty. *Ib., s.* 3. By another statute (P. L., *c.* 42, *s.* 4, xxv) a town, and hence a city (P. L., *c.* 54, *s.* 1), may vote money "to limit the ravages of and if possible to exterminate the brown tail moth and other insect pests." That the abatement of the nuisance is of general public concern and more than of local interest, where the nuisance is found, is not doubtful. It is not confined to local advantage, and the statutory declaration of the character of the nuisance as public confirms this view of the state-wide benefit purposed by the legislation.

It does not clearly appear under which of the two statutes referred to, the city was acting. But it is not deemed to be important, in passing upon the presented inquiry. In *Rhobidas* v. *Concord*, 70 N. H. 90, the court undertook to classify the situations under which municipal liability for torts does or does not exist, and liability is said to seem to be recognized in cases "Where duties of a public nature are voluntarily assumed." *Ib.,* III. The case of *Rowe* v. *Portsmouth*, 56 N. H. 291, cited to support this special classification, on analysis does not appear to do so. The defendant's grant of a special power or authority by the legislature was regarded as the reason for the duty of care in the exercise of the grant. The distinction was made "between the liability of towns and cities for neglect to perform [*sic*, negligence in performing] public duties out of the powers which they exercise under the general law, and their liability when the duty arises from the grant of some special power conferred on the particular town or city." *Ib.,* 293, 294. The case of *Eastman* v. *Meredith*, 36 N. H. 284, was held not to be parallel

because there the duty was "at most a public or political duty," with the corresponding right of the citizen that it be properly performed, "a public or political right." *Ib.*, 297. There was thus the underlying thought that the undertaking was for a local purpose engaged in by the defendant in its corporate capacity and not as a state agency.

Whether a municipality must or whether it may exercise a public function as a branch of the State government, would seem undeterminative of liability. The discussion in *Gates* v. *Milan,* 76 N. H. 135, 138, 139, develops the present state of the law on the point in well reasoned exposition. It may accordingly be declared that it is now an established principle that in a voluntary performance of a public, governmental undertaking a municipality incurs no liability unless it would also be liable if the performance were an imposed duty. Where a municipality exercises discretionary authority vested in it by the State to perform a governmental function, the function is no less of general and state-wide interest than if its performance by the municipality were ordered by the State.

In general, by the common law a municipality is not liable for its conduct in executing a governmental undertaking if the plaintiff's right is a public one arising out of the undertaking. *Eastman* v. *Meredith, supra; Rowe* v. *Portsmouth, supra,* 297; *Rhobidas* v. *Concord, supra,* 110; *Piasecny* v. *Manchester,* 82 N. H. 458, and cases cited. Nor is it liable when the work is done by persons not under its control and direction. *Edgerly* v. *Concord,* 59 N. H. 78; *Wakefield* v. *Newport,* 62 N. H. 624; *Doolittle* v. *Walpole,* 67 N. H. 554; *Wheeler* v. *Gilsum,* 73 N. H. 429; *Rhobidas* v. *Concord, supra,* 109.

But the situation here is that the plaintiff claims under her private right as a landowner. Whether, also, the inquiry relates to an undertaking in which the work was done by the city's agents and servants, presumably its highway department, would require consideration if it were material. While under the assumed facts the city's agents and servants did the work, yet in view of the public character of the undertaking its control and direction in the performance of the work is doubtful. Cases of exemption from municipal liability like *Edgerly* v. *Concord, supra,* relating to a city fireman's negligence, *Doolittle* v. *Walpole, supra,* relating to the care of a town lock-up, and *Wakefield* v. *Newport, supra,* relating to highway maintenance, would seem to be authority to show that the city here directed that the work be done if it voluntarily undertook it, but without right to say how it should be done, and that in any event the city

had nothing to do with the manner of performing the work if it was done as a legislative requirement.

Whatever the city's actual participation in the work may have been, for negligence in highway construction and maintenance within their borders municipalities are liable for resulting damage to neighboring property. They are "liable for negligent invasion of an adjoining owner's property rights by their use of land which they hold only for public, governmental purposes, as the soil of highways, . . . ." *O'Brien* v. *County*, 80 N. H. 522, 526. As there and elsewhere stated, this rule is too strongly established to be questioned.

Such an invasion appears to be here claimed. While the city's undertaking was to abate a nuisance common to all property it might affect, it was also, if incidentally, a highway project for the preservation of trees growing within the highway limits. If prevention of the spread of the nuisance was the main objective, yet its suppression within the local area is to be held a form of highway maintenance. The work being done, partly at least, for a proper highway purpose and within the highway limits, the city was in the exercise of its possessory rights in such use of the highway. It follows that under the assumed facts the city may be liable on the count for negligence.

The count for unreasonable use is not to be sustained. Such use usually involves the creation, by active or passive conduct, of a continuing condition of maintenance causing damage to other property. If a use may be unreasonable when the conduct does not create such a condition, it is not to be found here. The city's use of its highway for abating the nuisance of insect pests was reasonable as matter of law, because it was authorized by statute. The manner in which the use was exercised is claimed to be improper, but it was so only if it was negligent. The city had the right to spray the trees in a careful manner, and it was liable for unreasonable conduct only as negligent conduct is unreasonable. A finding of unreasonable but careful conduct could not be upheld. No defective construction or unsuitable maintenance of the highway is alleged, and the liability, if any, is not in doing the work but in doing it without due attention to avoid damage to the plaintiff's property. The city committed no wrong unless in negligently prosecuting the undertaking for which the highway was properly used.

That poison was used in the work of destroying insect pests, but not in highway maintenance, is a possible conclusion. Growth in the highway not incidental for purposes of travel may have stood

on its sides and may have been sprayed. The legal issue then is whether the city although acting as a state agency is nevertheless liable as a corporate body. In the highway cases where the municipality is held accountable for damage to adjoining land from a negligent construction or maintenance of the highway, the theory on which liability is based is that without accountability property would be taken by the public without compensation. The idea seems to be that damages awarded on the layout of the highway include such as cover the consequences of proper construction and maintenance, but not of improper work, so that in the event of such work further damages are to be allowed. And the liability has been extended to apply to other public facilities such as sewers. ". . . the land-owner is subjected to an injury which may amount to a taking of his land without compensation or redress." *Gilman* v. *Laconia*, 55 N. H. 130, 131. "If such a defence [of acting as a state agency] were available, private rights would not be secure against arbitrary forfeiture, and the implied constitutional provision against taking private property for public use without compensation would be abrogated. *Eaton* v. *Railroad*, 51 N. H. 504, 511." *Rhobidas* v. *Concord*, 70 N. H. 90, 112.

This application of the constitutional principle in eminent domain that private property publicly taken must be paid for seems illogical and inept and to lead to absurd consequences. To hold that any unauthorized invasion by the public of private property is a taking for which payment must be made, cuts deeply into the rule of the exemption of sovereignty from liability for its conduct. That the State cannot be sued against its will, is as much a constitutional principle as the requirement to pay for property it takes for public purposes. By the doctrine of eminent domain the State may acquire rights in private property by paying for them, but no rights therein are acquired by negligent management and maintenance of adjacent public property, even if payment for the damage done is made. As the reason for liability applies only to property damage, the plaintiff here would be without redress if, having a garden on which the poison was spread, she had eaten lettuce from it with resulting illness.

No other theory seems adequate to support liability in the cases of highway work and others which are parallel. "The construction and repair of highways legally laid out are governmental acts, and their essential character as such is not changed by legislative action imposing the duty of superintending and doing the work required upon officers selected by the towns or appointed in some other way.

If the selectmen of a town are required by the legislature to super-intend the repairs of the highways in the town, they act in that re-spect as public officers of the state." *O'Brien* v. *Derry*, 73 N. H. 198, 199. See also *Wakefield* v. *Newport*, 62 N. H. 624; *Hall* v. *Concord*, 71 N. H. 367, 369; *Wheeler* v. *Gilsum*, 73 N. H. 429; *Gates* v. *Milan*, 76 N. H. 135. It follows that since the municipality has not control or direction of the work committed to it to have done, the principle of *respondeat superior* cannot be invoked to establish liability, and a rule of *respondeat alius* is to be devolved only as a constitutional dictate or as a statutory order.

The real common-law issue is not of taking property for public purposes, but whether the State's freedom from liability arising out of the manner of performing its functions and undertakings extends to municipalities to which the performance is committed. In gen-eral principle it does. *Edgerly* v. *Concord*, 59 N. H. 78; *Sargent* v. *Gilford*, 66 N. H. 543; *Doolittle* v. *Walpole*, 67 N. H. 554; *Gates* v. *Milan*, 76 N. H. 135, 140.

Exceptions predicated upon a doubtfully logical extension of the constitutional implications of eminent domain ought to be limited to the existing situations which they govern. It is suggested in *O'Brien* v. *County*, 80 N. H. 522, 526, 527, that the cases allowing recovery when property is damaged by the negligent management and control of land held for general public purposes and those deny-ing recovery "for negligent invasion of private personal rights" by a municipality while acting as a governmental agency may not logically be reconciled. Except for constitutional demands the conflict is not to the credit of justice. It is incongruous that the plaintiff here having no enforceable private right of personal safety for a negligent manner of the exercise of a governmental function (*O'Brien* v. *County*, *supra*), yet should have a right of recovery as a landowner for damage to her property through such negligence. It is consistent that since neither a highway traveler nor she in her private right would have redress for personal harm from an im-proper handling of the poison, she should have none for loss to her property therefrom. Only as the Constitution or legislation estab-lishes a difference, is one to be recognized. It follows that except for negligent highway maintenance she may not recover for her property damage.

*Case discharged.*

BRANCH, J., concurred in the result: the others concurred.