Hillsborough,  
Nov. 2, 1943. } No. 3438.

### BENJAMIN A. REYNOLDS *v.* NASHUA.

*Ivory C. Eaton* (by brief and orally), for the plaintiff.

*Edward J. Lampron* (by brief and orally), for the defendant.

JOHNSTON, J.   The board of fire commissioners of the defendant city had requested its board of public works to install hydrants closer to the Ledge Street dump than those already in place, in order that fires at the dump might be more effectively controlled and put out. From the existing hydrant the distance to the dump was some 1,800 feet.   The city preferred to use its old hose for fires at the dump and this consisted of fifty-foot lengths.   The coupling of these pieces took some time.   The city decided to comply with the request of its fire commissioners and undertook to install two hydrants, one 446 feet from the existing hydrant and another 1,347 feet nearer the dump. By agreement with the Pennichuck Water Works, a private corporation furnishing water in said city, the latter was to dig the trench and the water works to lay the pipe.   The dump was used for ashes and refuse collected by the trucks of the sanitary department of the city. The use of these additional hydrants was warranted as a fire protection in the vicinity.   In addition to the saving of time there would be less loss of pressure from friction in the hose.

The defendant claims that in digging the trench at the request of its board of fire commissioners for the installation of two additional hydrants so that fires at the city dump could be better controlled, it was acting in a governmental capacity.

The plaintiff does not dispute the principle, settled in New Hampshire, that a municipal corporation engaged in a governmental function is not liable for any negligence of its agents or servants.   "No private action, in the absence of a statute giving it, can be maintained against a city for the neglect of a public duty imposed upon it by law for the benefit of the public, and from the performance of which the corporation receives no profit or advantage."   *Edgerly* v. *Concord*, 62 N. H. 8, 19.

We are not here concerned with the invasion of private property rights as in *Gilman* v. *Concord*, 89 N. H. 182, or the creation of a nuisance.

It is generally conceded that the fighting of fires and elimination of the fire hazard is ordinarily a governmental duty.   *Edgerly* v. *Concord, supra; Stevens* v. *Manchester*, 81 N. H. 369.

The plaintiff seeks to distinguish the present case on the ground that the city voluntarily undertook the work in question.   Accord-

ing to him, it might have refused the request of the fire commissioners. He phrases variously this idea of a necessary characteristic of a governmental function: a duty imposed by law; a duty that the municipality did not seek to perform; a duty against which its dissent would be unavailing.

A governmental function is determined by its character and whether it is mandatory or voluntary is immaterial. "Whether a municipality must or whether it may exercise a public function as a branch of the state government, would seem undeterminative of liability. The discussion in *Gates* v. *Milan*, 76 N. H. 135, 138, 139, develops the present state of the law on the point in well reasoned exposition. It may accordingly be declared that it is now an established principle that in a voluntary performance of a public, governmental undertaking a municipality incurs no liability unless it would also be liable if the performance were an imposed duty. Where a municipality exercises discretionary authority vested in it by the State to perform a governmental function, the function is no less of general and state-wide interest than if its performance by the municipality were ordered by the State." *Gilman* v. *Concord, supra,* 184. See also, *Fournier* v. *Berlin,* 92 N. H. 142.

The plaintiff also argues that the duty being performed in the present case was not governmental because, he claims, it was for profit or advantage. It of course was advantageous to the City of Nashua as a governmental agency to have fire hydrants nearer to the occasional source of fires. Streams of water could be had more quickly and with greater pressure. The old hose could be continued in use. However these advantages do not prevent the work of the city from being governmental. It cannot be ascertained from the record that the digging of the trench would result in any net saving to the city; but if it could, that is not profit that would render the function in question commercial. Fighting fires in the most advantageous or efficient way does not make the work commercial. The law does not punish efficiency or economies by imposing liability. A governmental function does not lose its character by incidental advantages or economies developed in the work.

The fact that labor was paid by the federal government did not make street construction nongovernmental in *Fournier* v. *Berlin, supra.* Increase in value of the municipality's land does not render the municipal corporation liable for negligence. 6 McQuillin, Municipal Corporations (Rev. 2nd *ed.*), s. 2845.

The receipt of profit from a work imposes liability upon a munici-

pal corporation for negligence to the extent that such receipt indicates a commercial enterprise. Instances of this sort of activity are water works, city markets for profit, wharves where wharfage is charged. In order that the activity of the municipality be considered commercial rather than governmental, there generally should be a particular and specific return. "Generally when engaged in the performance of service in the conduct of a business from which it is receiving particular and specific financial return the municipality is held accountable for the default or negligence of its employees as though it were an individual or private corporation." 6 McQuillin, Municipal Corporations (Rev. 2nd *ed.*), *s.* 2845.

The motions for a nonsuit and for a directed verdict should have been granted.

*Judgment for the defendant.*

All concurred.