### DAY v. CITY OF BERLIN.
No. 4148.

Circuit Court of Appeals, First Circuit.
Sept. 17, 1946.

Alexander Murchie, of Concord, N. H. (Robert C. Murchie, of Concord, N. H., and Arthur J. Bergeron, of Berlin, N. H., of counsel with him), for appellant.

Irving A. Hinkley, of Lancaster, N. H. (Arthur O. Dupont, of Berlin, N. H., of counsel), for appellee.

Before DOBIE (by special assignment), MAHONEY, and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

The plaintiff-appellant was injured when she fell down a flight of three steps located just inside a door opening inward from the street into a corridor of the defendant-appellee's City Hall. In the corridor there was a public telephone and also an information desk which in time of peace was manned by a city employee during the tourist season, but was not manned at the time of the plaintiff's fall. In addition, the corridor gave access to various public offices and to a women's lounge and lavatory open to the public in which the city maintained one free and two pay toilets. The pay toilets were equipped with coin operated locks of the usual type, the income from which was collected by the city and then divided between it and the owner-lessor of the locks; the former retaining 60% thereof, and remitting the remaining 40% to the latter. The plaintiff testified that she entered the corridor with the intention of using one of the pay toilets.

She brought the present action in the District Court of the United States for the District of New Hampshire, there being the requisite diversity of citizenship and amount in controversy to give it jurisdiction, to recover for the injuries which she sustained in her fall. At the trial in that court, upon the close of all the evidence, the defendant moved that a verdict be directed for it upon the ground, among others, that "In maintaining and operating its Ladies Comfort Station in the basement of the City Hall, in said Berlin, the defendant was engaged in the performance of a

public governmental undertaking and was exercising a governmental function and is immune from liability in this action." The District Court granted the defendant's motion soley upon the ground stated and the plaintiff took this appeal from the final judgment entered accordingly.

In Piasecny v. City of Manchester, 82 N.H. 458, 136 A. 357, decided in 1926, the Supreme Court of New Hampshire, quoting from Clark v. City of Manchester, 62 N.H. 577, and citing Edgerly v. Concord, 62 N.H. 8, 13 Am.St.Rep. 533; Rhobidas v. City of Concord, 70 N.H. 90, 107, 47 A. 82, 51 L.R.A. 381, 85 Am.St.Rep. 604; O'Brien v. Town of Derry, 73 N.H. 198, 60 A. 843; and Gates v. Town of Milan, 76 N.H. 135, 80 A. 39, 35 L.R.A., N.S., 599, said: "Although the decisions in other jurisdictions are not harmonious, the law limiting the liability of municipalities for tort is well settled in this state. 'In the absence of a statute creating the liability, no action can be maintained against a municipal corporation for an injury arising from the neglect of a public corporate duty, from the performance of which the corporation receives no special benefit, pecuniary or otherwise.' * * * 'It has always been understood that it was essential for a plaintiff to show the breach of a duty owed to him privately, as distinguished from one owed to the public.' Stevens v. [City of] Manchester, 81 N.H. 369, 127 A. 873."

Counsel for the parties before us do not question either the accuracy or the applicability of this statement of New Hampshire law. The bone of contention between them is whether the plaintiff's injury arose from the neglect of a public corporate duty from the performance of which the city received no special pecuniary benefit, and whether the plaintiff has shown the breach of a duty owed to her privately as distinguished from one owed to her as a member of the public at large. We think that under New Hampshire law both of these questions must be resolved in the defendant's favor.

In New Hampshire the test to determine whether any given municipal undertaking is public or private in its nature is not to inquire whether the undertaking is one imposed upon the municipality by statute or whether it is one voluntarily assumed. Gates v. Milan, supra; Gilman v. Concord, 89 N.H. 182, 184, 195 A. 672. "A governmental function is determined by its character and whether it is mandatory or voluntary is immaterial." Reynolds v. City of Nashua, 93 N.H. 28, 30, 35 A.2d 194, 195. And the character of a governmental function as public or private would seem to depend upon whether it was undertaken primarily for the benefit of the people of the community as individuals or primarily for the benefit of the municipality as a corporate entity—the cases imposing liability upon municipalities for damages caused by defective sewers, and presumably also water systems, see Roberts v. Dover, 72 N.H. 147, 55 A. 895 and Shea v. City of Manchester, 89 N.H. 547, 3 A.2d 103, creating a logically irreconcilable exception but one now too firmly established to be abandoned. Pinsonneault v. City of Concord, 80 N.H. 539, 120 A. 257.

But however this may be, decided cases in New Hampshire pricking out the line between public and private municipal functions clearly indicate that a town or city in maintaining a public comfort station is engaged in a public undertaking. If a municipality in maintaining a public playground (Piasecny v. Manchester, supra), a public swimming pool (Harkinson v. Manchester, 90 N.H. 554, 5 A.2d 721), and its public highways (Fournier v. City of Berlin, 92 N.H. 142, 26 A.2d 366, 140 A.L.R. 1054), is in each instance performing a public function, it seems to us highly unlikely that the Supreme Court of New Hampshire would hold that a municipality was not also performing a public function in maintaining a comfort station for use by the people generally. And it is established by a long line of cases that an incidental pecuniary advantage accruing to a municipality from the performance of a function characteristically public, such as accrued to the defendant in the case at bar from the use of coin locks on two of its three toilets, does not transform a public function into a private one. Hall v. Concord, 71 N.H. 367, 52 A. 864, 58 L.R.A. 455; Gates v. Town of Milan, 76 N.H. 135,

140, 80 A. 39, 35 L.R.A.,N.S., 599; Fournier v. City of Berlin, 92 N.H. 142, 26 A.2d 366, 140 A.L.R. 1054; Reynolds v. City of Nashua, 93 N.H. 28, 35 A.2d 194.

But the plaintiff contends that even though the city was performing a public governmental function in maintaining its comfort station, her action nevertheless can be sustained for the reason that by equipping the toilet she intended to use with a coin operated lock the city's negligence, if found, would constitute a violation of a duty which the city owed to her as a private individual as distinguished from a duty which it owed to her as a member of the general public. See Rhobidas v. City of Concord, 70 N.H. 90, 47 A. 82, 51 L.R.A. 381, 85 Am.St.Rep. 604; Stevens v. City of Manchester, 81 N.H. 369, 127 A. 873, and Gilman v. Concord, 89 N.H. 182, 184, 195 A. 672. She says that because of the lock the city in effect rented the toilet either to the owner of the lock, or to her as the latter's invitee, and hence, if negligent, the city is liable to her for her damages on the authority of Douglas v. Hollis, 86 N.H. 578, 172 A. 433, in which the Supreme Court of New Hampshire held that a municipality was liable in tort for injuries resulting to an invitee of the lessee of part of a school house by reason of the defective condition of the premises.

■ We concede some superficial similarity between a tenant of city owned property and an occupant of a city owned public toilet in that both enjoy an exclusive right to the possession of a defined portion of the city's property for a limited period of time, and, in the case of a pay toilet, for a stipulated price. But the analogy can be pressed no further, and the fact remains that the plaintiff in proposing to make use of a public toilet, even one equipped with a coin operated lock, was not proposing to exercise a right personal to herself, but a right which could be exercised by any member of the community at large. Thus, if the city's breach of duty should be proved, it would constitute an invasion not of a private but of a public right. In reality the city provided a service to the public in general which could be enjoyed either free or else upon the payment of a small fee at the election of those who might choose to avail themselves of it, and to apply the law of landlord and tenant to this situation for the purpose of permitting recovery would call for the distortion of a legal relationship to accomplish a development in the law which the Supreme Court of New Hampshire obviously considers a matter for legislation since it concluded its opinion in Harkinson v. City of Manchester, 90 N.H. 554, 555, 5 A.2d 721, with the statement: "Whether contemporary expansions of the field of governmental activities demand a corresponding expansion of the scope of municipal liability for the manner of performing public duties, is a matter for legislative rather than judicial determination."

The judgment of the District Court is affirmed.